Muin MUSTAFA, Plaintiff–Appellant,

v.

CLARK COUNTY SCHOOL DISTRICT, Edward Goldman, and Daniel Hussey, Defendants–Appellees.

No. 97–15745.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1998.

Decided Sept. 22, 1998.

Richard Segerblom, Las Vegas, Nevada, for plaintiff-appellant.

Carol Davis Zucker, S. Scott Greenberg, Kamer & Zucker, Las Vegas, Nevada, for defendant-appellee Clark County School District.

Robert P. Spretnak, John R. Bailey, Lionel Sawyer & Collins, Las Vegas, Nevada, for defendant-appellee Edward Goldman.

Thomas D. Beatty, Las Vegas, Nevada, for defendant-appellee Daniel Hussey.

Before: GOODWIN, PREGERSON and FERGUSON, Circuit Judges.

PER CURIAM:

Muin Mustafa, a teacher with the Clark County School District ("the district"), appeals a summary judgment against him in his action relating to various employment grievances. We reverse the summary judgment against his Rehabilitation Act claim and his 42 U.S.C. §§ 1981 and 1983 claims and affirm the dismissal of his other claims.

## I. BACKGROUND

Mustafa began working for the district in 1977. At the time that the incidents precipitating this lawsuit arose, he taught advanced-level mathematics and computer science at Clark High School. On January 15, 1994, M., a former student of Mustafa's, filed a report with the Las Vegas Metropolitan Police Department charging Mustafa with "Open and Gross Lewdness" arising out of an October 26 after-school meeting. Subsequently, M. reported the incident to Wayne Tanaka, the school principal, and Tanaka passed along the allegations to the district administration, including Daniel Hussey, the district's legal counsel.

On January 19, 1994, Tanaka and Hussey met with Mustafa, and Hussey presented Mustafa with a "Notice of Intended Disciplinary Action: Immediate Suspension and Dismissal" ("Notice"), which was signed by Superintendent Brian Cram. The Notice set forth M.'s allegations of sexual misconduct, stated that Mustafa was being suspended without pay, effective immediately, and stated that the superintendent would recommend to the Clark County Board of School Trustees ("the Board") that Mustafa be terminated. The Notice also informed Mustafa that a hearing would be held and that Mustafa had the right to request binding arbitration following the hearing. Mustafa denied the charges. After a preliminary investigation, Hussey informed Mustafa that his dismissal would be recommended to the Board.

On January 24, 1994, a pre-termination hearing was held at which Mustafa gave his version of events. After the hearing, Assistant Superintendent Edward Goldman and

Hussey held a brief closed-door meeting, followed by an announcement that the issue would go to arbitration, as was Mustafa's right, but the district would continue to recommend dismissal.

After an arbitration hearing held on March 9, 1994, the arbitrator ruled that the allegations against Mustafa could not be substantiated by clear and convincing evidence and ordered that Mustafa be reinstated "with back pay"; however, the award was silent regarding interest on this back pay. After that decision, the district did not return Mustafa to his previous position at Clark, but instead assigned him to its Math Institute in the Alternative Education Division for the remainder of the school year. Mustafa grieved this decision under the collective bargaining agreement, but his grievance was denied on the basis that the district was acting within its power under the collective bargaining agreement between it and the teachers union. Mustafa was then assigned to Cheyenne High School for the 1994–95 school year.

Meanwhile, the Clark County District Attorney had filed a criminal complaint against Mustafa based on M.'s allegations. On September 12, 1994, the charge was dismissed due to insufficient evidence.

That summer, Mustafa took a trip to the Middle East, where he suffered a foot injury that necessitated surgery when he returned in August. He reported for work at Cheyenne but immediately presented the assistant principal with notification of the impending foot surgery and a doctor's note indicating that he would have to be off work four to five weeks. During his recuperation from the surgery, Mustafa sought psychiatric and psychological treatment from Drs. Luisa Fijman and Barbara Parry, who diagnosed him with severe depression, panic disorder, and post-traumatic stress disorder due to work-related difficulties. Dr. Fijman ordered Mustafa to stay off work until December.

A dispute then arose whether Mustafa's doctors had "released" him to return to work on December 1, 1994. Dr. Fijman "released" Mustafa to return to non-classroom work only. The district requested that Mustafa submit to an examination by a physician of its choice. Mustafa agreed, and that physician opined that Mustafa could return to classroom work, although she qualified her opinion by saying that he might have difficulty doing so, which could necessitate another leave. After that diagnosis, the district ordered Mustafa to begin substitute classroom teaching or else be terminated. Mustafa began substitute teaching and was subsequently assigned to a regular classroom teaching position, but did suffer physical and mental difficulties. In addition, a dispute arose as to whether Mustafa had made himself available for a substitute assignment on his first day back at work, which resulted in the district docking him a day's pay.

After Mustafa was assigned to teach mathematics at a middle school in January 1995, he sought and was granted leave pursuant to the Family and Medical Leave Act (FMLA) from February 27 to June 2, 1995, due to the physical and mental difficulties he was experiencing. Following that leave, Mustafa was assigned to yet another middle school for the 1995–96 school year.

On January 5, 1995, Mustafa filed his action against the district and Goldman and Hussey individually, alleging deprivation of due process, violations of §§ 1981, 1983, and 1985, and violation of the Rehabilitation Act, 29 U.S.C. § 794. On January 30, 1995, Mustafa filed applications for a temporary restraining order and a preliminary injunction, seeking to enjoin the district from requiring him to work in a classroom or otherwise perform duties inconsistent with his doctors' imposed limitations. The court denied both. *Mustafa v. Clark County Sch. Dist.*, 876 F.Supp. 1177 (D.Nev.1995) (hereafter *"Mustafa I"*). Subsequently the parties filed cross-motions for summary judgment on the first cause of action, deprivation of a property interest without due process of law, which the court granted in favor of defendants, on September 18, 1996. Mustafa then moved for reconsideration of that ruling, and defendants moved for summary judgment on the remaining causes of action. The district court denied Mustafa's motion and granted defendants' motion. The order and judgment were entered on March 28, 1997. Mustafa filed a timely notice of appeal on April 3,

1997. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. THE CLAIMS

On appeal, Mustafa challenges all adverse rulings by the district court. We have reviewed all of them and have determined there are two claims presenting fact questions and were not appropriate for summary disposition: violation of the Rehabilitation Act of 1973 and discrimination under §§ 1981 and 1983.

### A. Violation of the Rehabilitation Act of 1973.

Mustafa contends that by alleging that the district forced him to return to classroom teaching on December 1, 1994, or else be terminated he has raised a genuine issue of material fact whether the district failed to accommodate his disability in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Mustafa contends that the district court erred in holding that he had not raised a genuine issue of fact that the discrimination which he suffered was due solely to disability.[1]

In order to make out a claim under the Rehabilitation Act, Mustafa must establish, *inter alia*, that he is (1) an individual with a disability, (2) otherwise qualified and (3) subjected to discrimination solely by reason of his disability.[2] 29 U.S.C. § 794(a). We must consider whether Mustafa can meet each of those requirements.

### Disability

■ Mustafa contends that, as of December 1, 1994, he was an individual with a disability because he suffered from depression, post-traumatic stress disorder, and pan-

ic attacks that substantially limited him in his major life activity of working. An individual has a disability if he has a physical or mental impairment which substantially limits one or more major life activities, a record of such impairment, or is regarded as having such an impairment. 29 C.F.R. § 1630.2(g); *accord Bragdon v. Abbott,* —— U.S. ——, 118 S.Ct. 2196, 2202–07, 141 L.Ed.2d 540 (1998) (interpreting an Americans with Disabilities Act claim using the Rehabilitation Act's standard of disability—a physical impairment substantially limiting a major life activity).

■ The district relies on 29 C.F.R. § 1630(j) to argue that, inasmuch as Mustafa's depression was a temporary, nonchronic impairment, he cannot be considered disabled under the statute.[3] However, there are substantial issues of fact whether, as of December 1, 1994, Mustafa suffered from a temporary, nonchronic depression, or alternatively, a longer-term, more chronic condition which was nevertheless controllable by medication. Also, it is not clear whether Mustafa remained disabled after Fall 1995. Thus, it cannot be determined by summary judgment that Mustafa's depression was of a short duration with no permanent impact so as to prevent him from making out a claim under the Rehabilitation Act of 1973.

The district also relies on 29 C.F.R. 1630.2(j)(3)(I) to argue that Mustafa was not substantially limited in his ability to work, inasmuch as he was restricted from the particular job of classroom teacher only, and was not restricted from a class of jobs or a broad range of jobs.[4] Under *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088 (D.Hawai'i 1980), the following factors are relevant to the inquiry of whether an impairment substantially

---

1. While Mustafa is not here appealing the district court's decision in *Mustafa I,* our discussion of whether he can meet the requirements of the Rehabilitation Act necessarily implicates some of the district court's reasoning in that opinion. We do recognize, however, that in *Mustafa I* the plaintiff was required to show probable success on the merits, while this case, wherein the defendants were the moving parties, considers whether Mustafa has shown there is a triable issue of material fact.

2. It is undisputed that the District receives federal financial assistance. 29 U.S.C. § 794(a)(4).

3. According to 29 C.F.R. § 1630(j), "temporary, nonchronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities."

4. According to 29 C.F.R. 1630.2(j)(3)(I), "the term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."

limits an individual's employment potential: "the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job expectations and training." *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249 (6th Cir.1985), citing *Black*, 497 F.Supp. at 1100–01.

Examining this case in light of the factors articulated in *Black* yields the conclusion that Mustafa has raised a genuine issue of fact as to whether he should be considered to have been substantially limited in his ability to work as of December 1, 1994. Mustafa's job expectations and training indicate educational positions in the fields of mathematics and computer science. He was arguably disqualified from all temporary and permanent classroom teaching positions in the Clark County area, although he would have been able to work as a tutor or administrator. Meanwhile, the district ordered Mustafa to return to· substitute classroom teaching on December 1, 1994, or be terminated, for the reason that no other position was available at that time of the school year. Thus, we cannot conclude, as a matter of law, that classroom teaching constituted no more than a narrow range of jobs from which Mustafa was arguably disqualified due to his disability. Mustafa has raised a genuine issue of material fact whether he was disabled under the Rehabilitation Act of 1973.

### Otherwise qualified

■ Mustafa must also show that he is a "qualified individual" within the meaning of the Rehabilitation Act. He contends that he is qualified by virtue of holding a teacher's license from the State of Nevada, as required by the district. According to the district, however, an essential function of a teacher's job is to teach in a classroom setting, and Mustafa's inability to do so rendered him unqualified.

Under the Rehabilitation Act, a "qualified individual" is an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of [the] position." 29 C.F.R. § 1630.2(m). Essential functions are the fundamental duties of the relevant position. 29 C.F.R. 1630.2(n)(1).

At this point, Mustafa has demonstrated that he is a qualified individual.[5] The district does employ teachers in non-classroom positions, positions that are not simply "make work" jobs but rather appear to exist in order to facilitate the needs of students and the district. The district cannot overlook the existence of these positions when it claims that it is essential that its teachers work in a classroom setting. Moreover, there is evidence that the district would have been able to use Mustafa in a non-classroom setting during the 1994–95 school year. Mustafa has at least raised a genuine issue of material fact whether he is otherwise qualified under the Rehabilitation Act.[6]

### Discrimination due solely to disability

■ Finally, Mustafa must show that he was discriminated against solely on the basis of his disability. This circuit has adopted the Second Circuit's two-pronged scheme for analyzing this issue.[7] *Smith v. Barton*, 914 F.2d 1330, 1339 (9th Cir.1990), discussing *Doe v. New York Univ.*, 666 F.2d 761 (2d Cir.1981). Under this scheme, if the employer disclaims any reliance on the employee's disability in having taken the employment action, *McDonnell Douglas* Title VII disparate impact analysis should be used to determine if the employer's reason is pretextual.

5. It is not lost on the court that the district adopts arguably contradictory positions in attempting to show that Mustafa cannot prove that he is disabled under the Rehabilitation Act, when it contends, on the one hand, that classroom teaching is an essential function of any teacher's job, but, on the other hand, that the inability to teach in a classroom setting does not disqualify a teacher from a broad range of jobs.

6. In *Mustafa I*, the district court gave full evidentiary weight to the district's assertion that class-

room teaching is an essential function of a teacher's job. 876 F.Supp. at 1181. However, this assertion does not qualify as an undisputed statement of fact in the context of a motion for summary judgment.

7. The district court failed to employ this analysis in either *Mustafa I* or in determining that Mustafa had failed to raise a genuine issue of material fact with respect to this requirement.

*Teahan v. Metro–North Commuter R.R. Co.,* 951 F.2d 511, 514–16 (2d Cir.1991), citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). On the other hand, if the employer acknowledges reliance on the disability in the employment decision, the employer bears the burden of showing that the disability is relevant to the job's requirements. *Id.* at 514–515.

Here, the matter falls into the category of cases in which the employer has disclaimed reliance on the disability, inasmuch as the district did not rely on Mustafa's depression in threatening to terminate him and, in fact, has for the most part maintained all along that he is not disabled. Thus, under *Smith,* Mustafa bears the burden at trial of showing that the district's reason for threatening termination was pretextual.

■ On summary judgment, inasmuch as Mustafa is the non-moving party, the district bears the initial burden to present evidence negating an essential element of Mustafa's claim or to point to specific portions of the record that demonstrate that Mustafa cannot meet his burden at trial. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

By ordering Mustafa to begin substitute classroom teaching as of December 1, 1994, in effect the district was prepared to terminate Mustafa for failing to return to his original position of classroom teacher. The district has contended that it required Mustafa to substitute teach "because it was not practical to place him in a regular teaching position nor was one available." However, the district begs the question when presenting this facially neutral reason. Inasmuch as Mustafa's physicians never released him to classroom teaching, the alternative at issue was not between placing Mustafa in a substitute position or in a permanent position, but rather between placing him in a classroom setting and placing him in a non-classroom setting.

The district has offered no reason why it could not place Mustafa in a non-classroom position as of December 1, 1994. There was evidence not only that there were plenty of non-classroom positions available surrounding the December 1994 period, but in fact the district had offered, in November 1994, to place Mustafa in a non-classroom setting for the remainder of the school year. Thus, the district's explanation of why it required Mustafa to substitute teach is nonresponsive to the issue of why it was prepared to terminate him rather than place him in a non-classroom setting.

Given the evidence of the availability of non-classroom positions, the district's claim that it did not rely on Mustafa's disability when threatening termination could be found to have been pretextual. At the least, the district has not made the showing necessary to prevail on a motion for summary judgment.

### Reasonable accommodation

■ In light of our determination that Mustafa has raised a genuine issue of material fact whether he was an otherwise-qualified individual with a disability who was discriminated against due to his disability in violation of the Rehabilitation Act of 1973, the issue then becomes whether Mustafa's suggested accommodation was reasonable. *Buckingham v. United States,* 998 F.2d 735, 742–743 (9th Cir.1993). Through his doctors, Mustafa suggested to the district that his disability could be accommodated by placing him in a non-classroom setting, such as at the Math Institute.

Mustafa bears the initial burden of showing that "the suggested accommodation would, more probably than not, have resulted in his ability to perform the essential functions of his job." *Id.* at 742. Inasmuch as Mustafa was claiming to be suffering from panic attacks, it is arguable that a non-classroom setting would have alleviated this condition to some degree. Moreover, Mustafa had performed well in such a setting in Spring 1994, during the pendency and resolution of the sexual misconduct charges, as well a time when he was arguably depressed and traumatized.

■ Thus, the burden shifts to the district to show that the suggested accommodation is unreasonable. "An employer ...

may not merely speculate that a suggested accommodation is not feasible.... [T]he employer has a duty to gather sufficient information from the [employee] and qualified experts as needed to determine what accommodations are *necessary* to enable the [employee] to perform the job." *Id.* at 740 (internal quotations omitted). The district advances no argument that Mustafa's suggested accommodation was not feasible, nor could it. Goldman unilaterally rejected Mustafa's doctors' recommendation that he be required to return to work only if he could be placed in a non-classroom setting, while he testified later that such non-classroom positions had been available.

Thus, we conclude that Mustafa has raised a triable issue of fact whether the district violated the Rehabilitation Act when it ordered him to return to classroom teaching on December 1, 1994, or else face termination. Accordingly, we conclude that the district court erred in finding that Mustafa could not demonstrate that he was discriminated against due solely to his disability.

## B. Violation of pre-deprivation due process rights

■ Mustafa contends that the district deprived him of a property interest without a hearing, in violation of his due process rights under *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). He bases this contention on the fact that the Notice, informing him that he was being immediately suspended without pay, had been signed by the superintendent prior to his meeting with Tanaka and Hussey on January 19, 1994. According to Mustafa, this indicated that the district decided to suspend him without pay prior to any hearing.

From the Supreme Court's recent clarification of *Loudermill* in *Gilbert v. Homar,* 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997), we conclude that, under the circumstances of this case, *Loudermill* does not require a pre-deprivation hearing. In *Gilbert,* the Court of Appeals had found a pre-deprivation violation of due process based on *Loudermill,* which it read as requiring the

government employer to suspend with pay if it perceived the need to remove an employee from the job prior to affording a hearing. *Id.* 117 S.Ct. at 1811.

The Supreme Court disagreed that *Loudermill* required this result, *id.* 117 S.Ct. at 1812,[8] and held that "the government does not have to give an employee charged with a felony a paid leave at taxpayer expense," when the employee "occupies a position of great public trust and high public visibility" and is given "a sufficiently prompt postsuspension hearing, [rendering] the lost income ... relatively insubstantial (compared with termination).... " *Id.* at 1813. The Court held further that, inasmuch as "the purpose of any pre-suspension hearing would be to assure that there are reasonable grounds to support the suspension without pay," this purpose was fulfilled "by the arrest and filing of charges" that occurred in the case. *Id.* Finally, the Court noted that any delay between the suspension and the hearing "actually benefits the employee by allowing state officials to obtain more accurate information about the arrest and charges." *Id.* at 1814.

As a public school teacher, Mustafa occupies "a position of great public trust and high public visibility." Mustafa was promptly afforded a hearing, five days following the suspension. Meanwhile, although this case differs from *Gilbert* inasmuch as Mustafa's suspension was not based on an independent determination of probable cause that a serious crime had been committed, *id.,* the Supreme Court emphasized in *Gilbert* that what is important is that the employer's decision to suspend the employee not be "baseless or unwarranted." *Id.* (internal quotations omitted). M.'s police report and subsequent discussion with her by district officials about the allegations reasonably supported the suspension.

Given our holding that Mustafa did not have a due process right to a pre-deprivation hearing, we do not reach the issue of whether he was effectively suspended without pay on January 19, 1994, even though he automati-

---

**8.** In *Gilbert,* the Supreme Court assumed, without deciding, that a suspension infringes on a protected property interest and thus triggers due process protections. 117 S.Ct. at 1811. We do the same.

cally received two pay checks following that date.

## C. Deprivation of property interest in pursing chosen profession

The first cause of action in Mustafa's Amended Complaint alleged deprivation of a property interest without due process of law on the basis that the district refused to return Mustafa to his position after Mustafa succeeded through arbitration in turning back the district's efforts to terminate him and after the prosecuting attorney dropped the criminal charges against him. In other words, Mustafa has alleged that he was not permitted to pursue his chosen profession. Mustafa then sought summary judgment on this claim, while the district filed a cross-motion for summary judgment on the same claim. In his opposition to the district's cross-motion, Mustafa asserted that his due process claim was based on his reinstatement to a position other than at Clark, the denial of interest on his back pay award, and the docking of one day's pay on December 1, 1994. The district court denied Mustafa's motion, granted the district's cross-motion, and subsequently denied Mustafa's motion for reconsideration.

Although Mustafa appeals the district court's grant of summary judgment, on the basis that triable issues of fact exist regarding the three incidents described above, he did not properly plead those denials of due process based on having been docked a day's pay and denied interest on his back pay award. *See Ansam Assocs., Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir. 1985) (upholding a denial of leave to amend the complaint, on the bases that the proposed claims alleged a new set of facts for which there was no "fair notice" and that permitting amendment after discovery had been completed and defendant had filed a motion for summary judgment would be "especially prejudicial") (internal quotations omitted). However, Mustafa has properly pled, in his amended complaint, a denial of due process

on the basis that he was not reinstated to his position at Clark.

Nevertheless, we hold that the district court did not err in granting the district's motion for summary judgment on this claim. While property interests can be created and defined by state law, the claimant must demonstrate that "he or she has a legitimate entitlement to it, not merely a unilateral expectation." *Sanchez v. City of Santa Ana,* 915 F.2d 424, 428 (9th Cir.1990), citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A state law does not create a property right merely because it creates procedural guarantees; rather, the interest is created "'if the procedural requirements are intended to be a significant substantive restriction on ... decision making.'" *Stiesberg v. State of Cal.,* 80 F.3d 353, 356 (9th Cir.1996), quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir.1994).

According to Mustafa, his constitutional right to be reinstated at Clark derives from Nevada Revised Statutes Chapter 288, which he contends prohibits the school district from transferring him for disciplinary reasons. However, Nevada law does not provide individual teachers with a right to avoid transfers for disciplinary reasons, but rather it gives teachers the right to collectively negotiate this issue. NRS 288.150.2(u) (providing that "the policies for the transfer and reassignment of *teachers* is a subject for mandatory collective bargaining") (emphasis added).[9] There is no indication in the language of the statute that this does not include policies regarding disciplinary transfers. And while a teacher transferred for disciplinary reasons may have a cause of action under a collective bargaining agreement, this would not rise to a constitutionally-protected interest inasmuch as it was not an interest created by state law.

Finally, we agree with the district court that Mustafa failed to demonstrate grounds on which reconsideration of denial of

---

9. NRS 288.150.3(a) provides in pertinent part: "3. Those subject matters which are not within the scope of mandatory bargaining and which are reserved to the local government employer without negotiation include: (a) Except as otherwise provided in paragraph (u) of subsection 2, the right to ... assign or transfer an employee, but excluding the right to assign or transfer an employee as a form of discipline."

his motion for summary judgment could be granted. Mustafa did not present the district court with newly discovered evidence or demonstrate that the district court committed clear error or manifest injustice, nor has there been an intervening change in controlling law. *See School Dist. No. 1J, Multnomah County v. ACandS, Inc.* 5 F.3d 1255, 1263 (9th Cir.1993).

### D. Deprivation of a liberty interest

 Mustafa contends that the district deprived him of a constitutionally-protected liberty interest when it transferred him from Clark amid allegations of sexual misconduct and refused to remove documents related to his attempted discharge and arbitration from his personnel file.

 The termination of a public employee which includes publication of stigmatizing charges triggers due process protections. *Board of Regents v. Roth,* 408 U.S. at 573, 92 S.Ct. 2701; *see also Matthews v. Harney County,* 819 F.2d 889, 891 (9th Cir.1987) ("[A] liberty interest is implicated in the employment termination context if the charge impairs a reputation for honesty or morality...."). However, to take advantage of these protections, an employee must show that "(1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment." *Id.* at 891–892. If a liberty interest is thereby implicated, the employee must be given an opportunity to refute the stigmatizing charge. *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

 While the district court's finding that the charges were not publicized may be problematic,[10] the court was warranted in granting summary judgment on this claim. In the end, Mustafa was not terminated, but rather was transferred. *See In re Selcraig,*

705 F.2d 789, 795 (5th Cir.1983) ("official publication of a stigmatizing charge ... without discharge is not of itself constitutionally prohibited"). Moreover, harm to reputation alone is insufficient to implicate an individual's liberty interest. *Paul v. Davis,* 424 U.S. 693, 711–712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Even more, Mustafa, by virtue of his arbitration hearing if not the January 19th and 24th hearings, was afforded the opportunity to clear his name. *See Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities,* 64 F.3d 810, 817–818 (2d Cir.1995) (an arbitration hearing pursuant to a collective bargaining agreement would afford the required name-clearing hearing).

### E. Section 1981 and 1983 claims

 Mustafa has presented a triable issue of material fact with respect to his §§ 1981 and 1983 national origin discrimination claim against Edward Goldman, the Assistant Superintendent of Clark County School District, with regard to Goldman's refusal to accommodate Mustafa's disability.

Mustafa has presented evidence of discriminatory ethnic remarks made by Goldman to or about Mustafa. In 1991, Goldman cornered Mustafa in the hall at school and demanded an explanation for Palestinian support of Saddam Hussein. In addition, when Mustafa returned with an injured foot after visiting the Middle East during summer vacation in 1994, Goldman commented to Mustafa's union representative that "maybe a camel stepped on his foot."

Other witnesses confirmed that Goldman's reactions to Mustafa's grievances were disproportionate. One of Mustafa's fellow teachers stated that after he wrote to Goldman to complain about Mustafa's being returned to Clark High School, Gold-

---

10. Mustafa contends that the charges have been publicly disclosed inasmuch as the Notice remains in his personnel file, and prospective employers have access to that file when he applies for other teaching positions. The district court found that due process protections were not triggered, because the sexual misconduct charges were never "officially or otherwise intentionally made public by anyone connected with the school district." However, this Circuit has yet to decide whether, in order for due process protec-

tions to be triggered, the charges must be made public by the employer itself, nor has this Circuit decided whether the charges must be made public in an official or intentional manner. *See Olivieri v. Rodriguez,* 122 F.3d 406, 408 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998). Other circuits which have considered this and related issues have disagreed on whether dissemination by the defendant is required in all cases. *Id.* (listing cases).

man's reaction "border[ed] on hysterical" and indicated ethnic bias against Mustafa. Finally, another union representative stated that Goldman continuously made references to Mustafa's Palestinian origin that were out of context and had no relevant bearing on what they were discussing.

 Sections 1981 and 1983 prohibit discrimination based on race, ethnic background, ancestry, and/or national origin committed under color of law. 42 U.S.C. §§ 1981(b) and 1983. To prevail under those statutes, Mustafa must prove that the defendants acted with intent to discriminate. *Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1113 (9th Cir.1991). Discriminatory remarks may create an inference of discriminatory motive. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir.1995); *Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir.1991). To establish a claim of discrimination, there must be a sufficient nexus between the alleged discriminatory remarks and the adverse employment decision. *DeHorney v. Bank of Am.*, 879 F.2d 459, 468 (9th Cir.1989).

Here, Mustafa has offered evidence of racial slurs made by the superintendent in charge of disciplinary matters in response to Mustafa's attempts to have his disability accommodated. Discriminatory remarks are relevant evidence that, along with other evidence, can create a strong inference of intentional discrimination. *Mangold v. California Pub. Util. Comm'n*, 67 F.3d 1470, 1476–77 (9th Cir.1995); *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410–11 (9th Cir.), *cert. denied*, ── U.S. ──, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996). In *Mangold*, for example, this Court affirmed a trial court's admission of evidence of discriminatory remarks by division directors who commented that "we want fresh young blood in this group," "[w]e're going into a bright new future in which we have an excellent staff of young professional people," and "older employees, unfortunately, don't take advantage of all the opportunities that are offered to them." [11] *Mangold*, 67 F.3d at 1476–77. The *Mangold*

court distinguished *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir.1990), and *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir.1993), cases that found discriminatory remarks to be "stray remarks" insufficient to preclude summary judgment. The *Mangold* court reasoned that, in contrast to *Merrick* and *Pepsico*, the comments in *Mangold* were tied to the employment decision because the comments were made by senior decision-makers. *Mangold*, 67 F.3d at 1477.

Mustafa's evidence also reveals that Goldman was in a position of authority with respect to Mustafa's employment. At every stage of the dispute, Goldman signed the school's correspondence with Mustafa, including one letter that indicated that Goldman's communication was the "official notification" of the school district. Also, Goldman admitted during his deposition that he was the one who decided to reinstate Mustafa as a substitute. Furthermore, Goldman stated that he alone decided to disregard the recommendation of the Human Behavior Institute that Mustafa work only in alternative education. Evidence of ethnically biased remarks from a person in such a position of authority are sufficient to allege the connection necessary under *DeHorney* to survive summary judgment.

 The "crux" of disparate treatment claims is "the elusive factual question of intentional discrimination." *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir.1985), *modified*, 784 F.2d 1407 (9th Cir.1986) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Therefore, "because of the inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact." *Lindahl*, 930 F.2d at 1438. Mustafa's evidence of both Goldman's authority and bias has satisfied this burden.

 Finally, Goldman's defense of qualified immunity must fail. "Government officials are entitled to qualified immunity only if a reasonable person would not have been

---

**11.** This Court applies the same standards to disparate treatment claims pursuant to Title VII, the Age Discrimination in Employment Act (ADEA), and §§ 1981 and 1983. *See Sischo–Nownejad*, 934 F.2d at 1112; *Mangold*, 67 F.3d at 1473–74.

aware that the actions at issue violated well established statutory or constitutional rights." *Lowe,* 775 F.2d at 1011. A reasonable person would be aware that national origin discrimination violates well established rights.

Mustafa may or may not prevail at trial. Nevertheless, given the intensely factual nature of the inquiry, summary judgment is inappropriate. We conclude that Mustafa has raised a triable issue of fact whether Goldman discriminated against him in making decisions not to accommodate Mustafa. Thus, the district court erred in granting summary judgment for Goldman, and we reverse and remand on this point. The district court was correct, however, in granting summary judgment in favor of Hussey because Mustafa had failed to allege any discriminatory actions or comments on Hussey's part.

**F. Section 1985 claim**

Mustafa's final claim is that there was a § 1985 conspiracy to discriminate against him. In order to prove a claim for relief under 42 U.S.C. § 1985, Mustafa must show: (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of a right or privilege of a United States citizen. Mustafa alleges that Hussey and Goldman conspired to treat him differently because of his Palestinian ancestry.

This circuit has not yet addressed "whether individual members of a single governmental entity can form a 'conspiracy' within the meaning of section 1985." *Portman v. County of Santa Clara,* 995 F.2d 898, 910 (9th Cir.1993). However, we need not resolve this issue in this case. There is at least one element of this claim which has no support in the record.

Mustafa has not demonstrated a genuine issue of material fact regarding the existence of a conspiracy. Although Mustafa's allegations regarding Goldman's comments indicate the possibility of ethnic animus on Goldman's part, these comments would not constitute evidence of a conspiracy to deprive anyone of a constitutional right because of racial or ethnic prejudice. Mustafa has cited no in-

stances of ethnic animus on the part of Hussey or anyone else in the school management, nor has he provided any evidence of any agreement between Hussey and Goldman to violate his constitutional rights. *See Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 626 (9th Cir.1988).

Inasmuch as the district court did not err in finding that Mustafa could not establish a § 1985 claim against Goldman and Hussey, Mustafa cannot establish that this claim can be imposed on the district through municipal liability.

**III. CONCLUSION**

Mustafa has presented evidence sufficient to survive the motion for summary judgment against the district on his Rehabilitation Act claim and against Goldman on his §§ 1981 and 1983 claim; therefore, we remand those claims to the district court. The judgment of the district court in all other respects is affirmed, including the dismissal of all claims against Hussey. The appellant is entitled to costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.