**UNITED STATES of America,**
**Plaintiff,**

v.

**Lei SHI, Defendant.**

**No. CRIM 02–00116HG.**

United States District Court,
D. Hawai'i.

May 1, 2003.

Order Denying Reconsideration
Sept. 16, 2005.

Thomas J. Brady, Assistant U.S. Attorney, Office of the U.S. Attorney, Honolulu, HI, for Plaintiff.

Richard T. Pafundi, Honolulu, HI, for Defendants.

## ORDER REGARDING JURISDICTION OVER DEFENDANT LEI SHI

GILLMOR, District Judge.

Before the Court is the question of whether this Court has jurisdiction over Defendant Lei Shi, a Chinese national, who is charged in an Indictment filed on April 4, 2002, with seizing and exercising control over a covered ship[1], the Full Means No. 2, by force and through acts of violence including the killing of the captain and first mate.

On November 13, 2002, this Court ordered the parties to address in writing the question of jurisdiction. The United States responded on January 10, 2003 and Defendant responded on January 29, 2003. A hearing on jurisdiction was held on February 10, 2003. It is the conclusion of the Court that 18 U.S.C. § 2280 vests the Court with jurisdiction over Defendant Lei Shi for the crime alleged.

### *FACTUAL & PROCEDURAL HISTORY*

It is alleged that in March 2002, the "Full Means No. 2," a Taiwanese fishing vessel registered in the Republic of the Seychelles, had been at sea fishing for approximately one year. While the captain of the vessel was a Taiwanese national, the remaining 29 crew members, including the first mate and Defendant Lei Shi, are or were citizens of the People's Republic of China.

According to the Government, on March 14, 2002, the Full Means No. 2 was located in international waters about 800 miles south of Hawaii. Defendant Lei Shi, the ship's cook, had reportedly been recently replaced and assigned to duties as a deckhand. That evening, the captain is alleged to have struck Defendant several times for

not working. Shortly after, a crewmember is reported to have observed Lei Shi enter a storage area that contained knives. Lei Shi was later observed on the bridge with two knives, one of which was between eight and ten inches long.

Around 10:00 p.m., the crew, who were then engaged in pulling nets from the ocean, reportedly heard screams from the bridge. The second mate stated that, when he reached the ladder to the bridge, he observed the first mate bleeding from his stomach. The first mate then allegedly said that Defendant Lei Shi had killed him. The first mate later died and his body was placed in a freezer.

Once on the bridge, the second mate reportedly saw Lei Shi holding a knife near the captain who was bleeding from his chest. Lei Shi is said to have ordered the second mate to "drive the ship" and ordered other crewmembers to clean the bridge and throw the captain's body overboard. Defendant Lei Shi is alleged to have remained on the bridge and stated that he would kill anyone who disobeyed him and that no one may use the radio.

The Government alleges that over the next two days Lei Shi controlled the ship, ordering the crew to sail to China and threatening to scuttle the vessel if his orders were not followed. On March 16, however, the crew is said to have overpowered the Defendant and the acting master then set a course for Hawaii. No one alive aboard the Full Means No. 2 claimed to know how to operate the radio. Consequently, the ship's parent company, after not hearing from the vessel for several days, contacted the U.S. Coast Guard. A Coast Guard aircraft then spotted the vessel on March 18, 2002. On March 19, a

---

1. A " 'covered ship' means a ship that is navigating or is scheduled to navigate into, through or from waters beyond the outer limit of the territorial sea of a single country or a lateral limit of that country's territorial sea with an adjacent country." 18 U.S.C. § 2280(e).

Coast Guard cutter intercepted the vessel approximately 60 nautical miles from Hilo. The Coast Guard was unable to board immediately due to rough seas.

Later that same day, two crewmembers left the Full Means No. 2 on a launch and boarded the cutter. One crewmember produced a letter, written in Chinese, addressed to the Hawaiian government. The letter described the deaths, Defendant's takeover of the ship and his capture, and requested assistance. According to the Government, on either March 19 or 20, 2002, after receiving a waiver of jurisdiction over the vessel from the Republic of Seychelles and permission from the acting master, the Coast Guard boarded the Full Means No. 2 and assisted driving the vessel to the mouth of Honolulu Harbor.

On March 20, 2002, FBI agents boarded the Full Means No. 2 to investigate. On March 21, 2002, Lei Shi was arrested pursuant to a federal complaint.

On April 4, 2002, Lei Shi was indicted for engaging in an act of violence against a vessel in maritime navigation; the seizure and exercise of control over a covered ship; and injuring and killing the captain and first mate in connection with the seizure and control of the vessel, in violation of 18 U.S.C. §§ 2280(a)(1)(A)(B)(G) & (H), and 2280(b)(1)(C).

On March 26, 2002, a magistrate judge issued warrants for the arrest of the crewmembers as material witnesses. On April 2, 2002, another magistrate judge granted the government's motion seeking detention of the witnesses without bail. Five of the crewmembers then filed motions to quash the material witness warrants on the basis that this Court lacked jurisdiction over the offense.

In its Order of April 18, 2002, this Court denied the motion to quash. *See United States v. Yan Long Xiong, et al.,* Misc. No. 02–00044 SOM–LEK (D. Haw. April 18, 2002). While declining to make a final determination with respect to jurisdiction at the time, the Court concluded that there was sufficient evidence of jurisdiction to go forward with the criminal proceedings and retain custody of the material witnesses.

As noted earlier, on November 13, 2002, this Court ordered the parties to address in writing the jurisdictional question. The United States responded on January 10, 2003 and Defendant responded on January 29, 2003. A hearing was held on the issue on February 10, 2003.

### ANALYSIS

Congress ratified the Convention for the Suppression of Unlawful Acts Against the Safety of Maritime Navigation ("Convention") in 1995. The preamble of the Convention reflected the desire to develop cooperation between states to prevent unlawful acts against maritime navigation and provide for prosecution and punishment when such acts do occur. The Convention was drafted and adopted in response to the October 1985 seizure of the vessel Achille Lauro and the murder of an American passenger. *See* S.Rep. No. 102–30 at 22 (1991).

Congress enacted 18 U.S.C. § 2280 in 1996, entitled "Violence against maritime navigation". The statute was intended to provide codification of the unlawful acts against the safety of maritime navigation contained in the Convention.

18 U.S.C. § 2280 applies to "[a] person who unlawfully and intentionally—

(A) seizes or exercises control over a ship by force or threat thereof or any other form of intimidation;

(B) performs an act of violence against a person on board a ship if that act is likely to endanger the safe navigation of that ship;

\* \* \* \* \* \*

(G) injures or kills any person in connection with the commission or the attempted commission of any of the offenses set forth in subparagraphs (A) through (F); or

(H) attempts or conspires to do any act prohibited under subparagraphs (A) through (G). . . ."

The language, and the letters corresponding to each subparagraph of the statute closely track Article 3 of the Convention, except for subparagraph (H) that was added by Congress.

Subsection (b) of section 2280 states "There is jurisdiction over the activity prohibited in subsection (a)—

(1) in the case of a covered ship, if—

 \* \* \* \* \* \*

(C) the offender is later found in the United States after such activity is committed. . . ."

A "covered ship" is defined as "a ship that is navigating . . . into, through or from waters beyond the outer limit of the territorial sea of a single country or a lateral limit of that country's territorial sea with an adjacent country." 18 U.S.C. § 2280(e).

A "ship" is a floating craft that is not owned or operated by a government. 18 U.S.C. § 2280(e).

Given the language of the statute, the conduct Lei Shi is charged with committing places him squarely within the four corners of the statute.

■ Defendant Lei Shi's memorandum in response to this Court's Order requesting briefing on the issue of jurisdiction does not directly dispute the applicability of section 2280. Instead, Lei Shi contends that because the United States Department of State has refused to inquire of the People's Republic of China whether it would exercise its jurisdiction to criminally prosecute Lei Shi, the Defendant cannot make an informed decision over the jurisdiction of this United States District Court. (*See* Defendant's Memo. in Response at 2 and Declaration of Thomas J. Brady, ¶ 5, attached to Government's Memorandum, that the State Department would not forward to China the Justice Department's inquiry regarding jurisdiction).

The issue of whether the State Department makes contact with the People's Republic of China does not affect jurisdiction under 18 U.S.C. § 2280.[2] Article 6, paragraph 4 of the Convention states that:

Each State Party shall take such measures as may be necessary to establish its jurisdiction over the offences set forth in article 3 in cases where the alleged offender is present in its territory and it does not extradite him to any of the States Parties which have established their jurisdiction in accordance with paragraphs 1 and 2 of this article.

Paragraphs 1 and 2 of Article 6 refer to the State in which the ship is flagged, a State in which the offense is committed, and the State of the accused's nationality. Because the offense is alleged to have occurred in international waters, the Republic of the Seychelles (being the State which flagged the Full Means No. 2) and the People's Republic of China (being the State of Lei Shi's citizenship) could, additionally, have jurisdiction. But under the terms of the Convention, neither the Seyc-

---

**2.** As the First Circuit explained in *United States v. Kin–Hong,* 110 F.3d 103, 109 (1st Cir.1997), "[t]he United States does not have an extradition treaty with the PRC." Consequently, while this omission could possibly have affected the State Department's consid-

eration of the referral of the instant case to China, the issue is moot given the jurisdiction conveyed on the United States by the Convention for the Suppression of Unlawful Acts Against Maritime Navigation and 18 U.S.C. § 2280.

helles nor China has a mandatory or greater claim to prosecute than the United States. The discretion to extradite is left to the United States under both the Convention and 18 U.S.C. § 2280. Should the United States elect not to extradite, both the Convention and 18 U.S.C. § 2280 permit the United States to prosecute if "the offender is later found in the United States after such activity is committed." 18 U.S.C. § 2280(b)(1)(C).

This "found in the United States" language is similar to the "found in" language of the aircraft piracy statute, 49 U.S.C. § 46502, which implemented the Hague Convention for the Suppression of Unlawful Seizure of Aircraft. In *United States v. Rezaq*, 134 F.3d 1121 (D.C.Cir.), *cert. denied*, 525 U.S. 834, 119 S.Ct. 90, 142 L.Ed.2d 71 (1998), the defendant argued that the "found in" language did not apply because he was forcibly brought to the United States. The United States Circuit Court for the District of Columbia rejected the defendant's argument, holding instead that "the word 'found' means only that the hijacker must be physically located in the United States," and not that the defendant was voluntarily within the United States or first detected in the United States. *Rezaq*, 134 F.3d at 1132. Similarly here, the fact that the defendant was "found in" the United States makes him subject to prosecution by United States courts under 18 U.S.C. § 2280.

It is also important that the United States has complied with its obligations under the Vienna Convention on Consular Relations by permitting Lei Shi to meet with consular officials from the People's Republic of China. (Declaration of Thomas J. Brady, ¶ 2, attached to Government's Memorandum Concerning Jurisdiction). As a result, Defendant Lei Shi cannot claim that he has suffered a violation of his right to meet with his countrymen to seek whatever recourse is available through diplomatic channels.

### CONCLUSION

The Court finds that it has jurisdiction over the offenses set forth against Defendant Lei Shi in the indictment through the Convention for the Suppression of Unlawful Acts Against Maritime Navigation and 18 U.S.C. § 2280.

IT IS SO ORDERED.

## ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S MAY 1, 2003 ORDER REGARDING JURISDICTION OVER LEI SHI

Defendant asks the Court to reconsider its May 1, 2003 Order Regarding Jurisdiction over Defendant Lei Shi. The Court ruled in its May 1, 2003 Order that 18 U.S.C. § 2280 vests the Court with jurisdiction over Defendant for the crime alleged. Defendant asks the Court to reconsider its conclusion that it has jurisdiction over the offenses Defendant is alleged to have committed in violation of 18 U.S.C. § 2280.

 Defendant's motion for reconsideration is based in large part on the opinions and writings of Professor Malvina Halberstam, a law professor who was involved in the drafting of the Convention for the Suppression of Unlawful Acts Against the Safety of Maritime Navigation. The Court has reviewed the declaration of Professor Halberstam, as well as her published writings[1] and finds that they do not provide new arguments that were not or could not have been previously raised.

Defendant has not presented any new facts or argument, nor pointed to intervening change in controlling law, warranting

---

1. Professor Halberstam's published articles are appended as an Exhibit to Defendant Witness Malvina Halberstam's Offer of Proof, filed on August 8, 2005.

reconsideration of the Court's May 1, 2003 Order.

For the reasons that follow, the Court DENIES Defendant's Motion for Reconsideration.

## PROCEDURAL HISTORY

The procedural history leading up to the Court's May 1, 2003 Order was set forth in detail in that Order and need not be repeated herein.

On August 9, 2005, Defendant filed a Motion for Reconsideration of Order Regarding Jurisdiction Over Defendant Shi Lei.

On August 22, 2005, the Government filed a Memorandum in Opposition to Defendant's Motion for Reconsideration of Order Regarding Jurisdiction Over Defendant Lei Shi.

## STANDARD OF REVIEW

Courts have established only three grounds justifying reconsideration under Rule 60(b): (1) an intervening change in controlling law; (2) the discovery of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *See Mustafa v. Clark County School District,* 157 F.3d 1169, 1178–79 (9th Cir.1998); *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993); *Arakaki v. Lingle,* 299 F.Supp.2d 1129, 1130 (D.Haw.2003).

The District of Hawaii has implemented the above described standard in Local Rule 60.1, which states:

Motions for reconsideration of interlocutory orders may be brought only upon the following grounds:

(a) Discovery of new material facts not previously available;

(b) Intervening change in law;

(c) Manifest error of law or fact.

The rules governing motions for reconsideration apply to criminal motions. Local Criminal Rule 12.3 states that "[t]he local rules pertaining to civil motions are applicable to motions in criminal cases."

█ A motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir.2000) (emphasis in original).

█ The disposition of a motion for reconsideration pursuant to Fed.R.Civ.P. 60(b) is within the discretion of the district court and will not be reversed absent an abuse of discretion. *Plotkin v. Pacific Tel. & Tel. Co.,* 688 F.2d 1291, 1292 (9th Cir. 1982). There is a "compelling interest in the finality of judgments which should not lightly be disregarded." *Rodgers v. Watt,* 722 F.2d 456, 459 (9th Cir.1983).

## ANALYSIS

Defendant has not articulated any new arguments or put forth new facts that warrant reconsideration of the May 1, 2003 Order.

Defendant argues that the statute under which Defendant is charged, 18 U.S.C. § 2280, should be confined in its application to acts of terrorism. The centerpiece of Defendant's Motion for Reconsideration is a Declaration of Malvina Halberstam, who was involved in the drafting of the Convention for the Suppression of Unlawful Acts Against the Safety of Maritime Navigation. Defendant has submitted the Halberstam Declaration in an attempt to again raise the argument that 18 U.S.C. § 2280 "was not intended" to cover the alleged crime committed.

Defendant cannot present arguments or evidence in a motion for reconsideration that could reasonably have been raised earlier in the litigation. *See Kona Enterprises, Inc.,* 229 F.3d at 890. Defendant's argument regarding jurisdiction and the component Halberstam Declaration and

other exhibits all could have been presented previously, and were presented in other contexts. Defendant relied on the views of Professor Halberstam in his capital sentencing memorandum, in which he heavily quoted from Halberstam's article *Terrorism on the High Seas: The Achille Lauro, Piracy and the IMO Convention on Maritime Safety*, 82 Am.Jur. Int'l Law 269 (1988).

The Government addressed Professor Halberstam's position in its January 10, 2003 Memorandum in Response to the Court's Request for Its Views Concerning Jurisdiction, and even provided an excerpt of Halberstam's argument as an Exhibit thereto. (*See* Government's January 10, 2003 filing at 13 & Exhibit A). Professor Halberstam's position has already been considered by the Court in reaching a conclusion on the issue of jurisdiction.

The applicability of 18 U.S.C. § 2280 to Defendant's alleged acts has already been considered and ruled on by the Court. The Court concluded in its May 1, 2003 Order that the language of the statute clearly applies to the alleged actions Defendant is charged with committing. (*See* May 1, 2003 Order at 7). Defendant has not demonstrated any intervening change in controlling law, the discovery of new evidence not previously available, or the need to correct clear or manifest error in law. *See Mustafa*, 157 F.3d at 1178–79; *School Dist. No. 1J*, 5 F.3d at 1263. The Court's May 1, 2003 Order Regarding Jurisdiction Over Defendant Lei Shi stands.

### CONCLUSION

In accordance with the foregoing, Defendant's Motion for Reconsideration is DENIED.

IT IS SO ORDERED.