NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 26 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RICHARD VANGIESON, an individual, | No.    22-55998 |
| Plaintiff-Appellant, | D.C. No.
3:20-cv-01033-LAB-MDD |
| v. | |
| LLOYD AUSTIN, in his official capacity as the Secretary of Defense, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted December 4, 2023
Pasadena, California

Before:  CALLAHAN, R. NELSON, and BADE, Circuit Judges.
Dissent by Judge CALLAHAN.

Plaintiff-Appellant Richard Vangieson appeals from the district court's order

granting summary judgment to Defendant-Appellee Lloyd Austin, in his official

capacity as the U.S. Secretary of Defense, on Vangieson's claim of disability

discrimination under the Rehabilitation Act.  Vangieson contends that his former

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

employer, the Defense Contract Audit Agency (DCAA), fired him from his position as a Senior Auditor because of his anxiety disorder. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review de novo a district court's order granting summary judgment. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1311 (9th Cir. 2022) (citation omitted). We view the evidence in the light most favorable to the nonmoving party, but that "does not require that [we] ignore undisputed evidence produced by the movant." *L.F. v. Lake Wash. Sch. Dist. #414*, 947 F.3d 621, 625 (9th Cir. 2020) (citation omitted). We apply the *McDonnell Douglas* burden-shifting framework to discrimination claims under the Rehabilitation Act. *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1175–76 (9th Cir. 1998) (citation omitted).

To establish a prima facie case of discrimination, Vangieson must offer evidence that he was qualified for his position; that is, that he could perform the essential functions of a Senior Auditor with or without a reasonable accommodation. *See id.* at 1175 (citing 29 C.F.R. § 1630.2(m)). "Essential functions are the fundamental duties of the relevant position." *Id.* (citing 29 C.F.R. § 1630.2(n)(1)). There is no genuine dispute that Vangieson's poor job performance stemmed from an inability to appropriately budget hours and timely complete audits in compliance with DCAA standards. We conclude that these functions are essential to the Senior Auditor position because a job function is

2

essential when "the reason the position exists is to perform that function." 29 C.F.R. § 1630.2(n)(2)(i).

Considering the unrebutted deficiencies in Vangieson's job performance, we conclude that no reasonable jury could find that he is qualified for the Senior Auditor position absent an accommodation.[1] Thus, Vangieson must identify a reasonable accommodation permitting him to perform the essential functions of the job. *See Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006) (citation omitted). He has not done so.

Vangieson contends that his job performance would have improved with an accommodation of "direct and open face-to-face reviews of his performance instead of inconsistently criticizing him in later written reports or reviews" and that "a simple adjustment of [his supervisor's] communications was all the accommodation he required." Although that accommodation may have enabled

---

[1] It is unclear whether Vangieson contends that he requires an accommodation. The first amended complaint alleged that he "was capable of and fulfilled the essential functions of his job satisfactorily or better." And in a letter to opposing counsel, Vangieson's counsel stated that Vangieson "did not need an accommodation to continue performing his job in the same manner and to the same standards as immediately preceding his medical leave." But Vangieson stated both in a declaration and in an interrogatory response that he requires an accommodation to perform the job's essential functions. Moreover, in his opening brief, Vangieson notes that he "specifically stated that he required some sort of assistance or accommodation to help perform his job duties." We need not resolve this ambiguity in Vangieson's stance because there is no genuine dispute that he could not perform the essential functions of a Senior Auditor without an accommodation.

Vangieson to improve communication with his supervisors and incorporate their feedback, he points to no evidence that it would have allowed him to efficiently complete projects, consistently apply DCAA standards, or complete assignments by their due date. The record reflects that Vangieson's anxiety affects his ability to "handle day to day communication," communicate with supervisors, and address criticism of his work. But he points to nowhere in the record indicating that his disability caused the deficiencies in his work product. Because Vangieson's anxiety manifests as an inability to confront or correct his errors, it is unclear how any accommodation would prevent him from making the errors in the first place. Thus, Vangieson has failed to offer evidence from which a reasonable jury could conclude that he was qualified for the Senior Auditor position. Absent evidence on that element of his claim, the district court properly granted summary judgment to Secretary Austin. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (stating that a complete absence of proof on an essential element merits summary judgment).

**AFFIRMED.**

CALLAHAN, Circuit Judge, dissenting:

Mr. Vangieson has raised "genuine issues of material fact" regarding his ability to perform the duties of Senior Auditor. *Fontana v. Haskin*, 262 F.3d 871, 878 (9th Cir. 2001). Because these issues should be decided by a jury, and not a panel of judges, I respectfully dissent.

Viewing the facts in the light most favorable to Mr. Vangieson, and drawing reasonable inferences in his favor, here is what happened. *O'Doan v. Sanford*, 991 F.3d 1027, 1033 (9th Cir. 2021). Mr. Vangieson had been rated "Fully Successful" from 2012 to 2017, all while suffering from Aspergers and severe anxiety. In August 2017, he informed his supervisor at the Department of Defense Contract Audit Agency (DCAA) that he was entering a six-month inpatient treatment program. After receiving medical care and returning to work, however, everything was different. His new supervisor—Lisa Gift—was aware of Mr. Vangieson's disability and his request for "direct and open face-to-face reviews of his performance," yet consistently delivered negative feedback to him via email. Ms. Gift then placed Mr. Vangieson on a performance improvement plan (PIP), failed to provide him any training or guidance to address his alleged performance issues, and ultimately stopped providing substantive feedback after Mr. Vangieson continued to seek reasonable accommodations. Further, just a month before Mr. Vangieson's PIP concluded, Ms. Gift responded to an email from DCAA Human Resources regarding

Mr. Vangieson's upcoming pay increase and wrote: "I do not believe that he is going to pass the PIP. What do I need to do to withhold his [salary] increase?" Mr. Vangieson was then terminated, on Ms. Gift's recommendation.

I read these facts as raising genuine issues that should be decided by a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (holding that "the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Mr. Vangieson's "Fully Successful" performance reviews belie the majority's contention that there were "unrebutted deficiencies in Vangieson's job performance." Mem. 3:3. Indeed, Mr. Vangieson completed 18 audits while employed with DCAA, none of which were deemed incomplete. Accordingly, contrary to the majority's conclusion, a reasonable jury could find that Mr. Vangieson is qualified for the Senior Auditor position absent an accommodation.

The majority acknowledges that Mr. Vangieson identified a reasonable accommodation, *i.e.*, "direct and open face-to-face reviews of his performance," but believes this requested accommodation would not have helped him "efficiently complete projects, consistently apply DCAA standards, or complete assignments by their due date." Mem. 4:1-5. This again fails to "draw reasonable inferences in favor" of Mr. Vangieson. *O'Doan*, 991 F.3d at 1035. Mr. Vangieson's condition hampered his ability to communicate with supervisors and to address criticism of his work, and even prevented him from opening emails. It stands to reason that "direct

and open face-to-face" communication could have helped him with efficiency and timeliness, as direct and open communication often helps catch mistakes before they even happen. Mr. Vangieson's reasonable accommodation therefore could have prevented him "from making the errors in the first place." Mem. 4:10-11. Moreover, DCAA "bore an affirmative obligation to engage in an interactive process to identify, if possible, a reasonable accommodation that would permit [Mr. Vangieson] to retain his employment." *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006). That did not happen here. There is no dispute that DCAA did not "consider whether an alternative accommodation within the company would be possible," as is required by law. *Allen v. Pac. Bell*, 348 F.3d 1113, 1115 (9th Cir. 2003). Summary judgment was therefore inappropriate. *Dark*, 451 F.3d at 1088.

Finally, there is a genuine dispute whether DCAA's reason for terminating Mr. Vangieson was pretextual. *See Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012). DCAA claims that it terminated Mr. Vangieson because he did not complete his assignments on time, made errors requiring extensive revisions, failed to incorporate feedback, and did not notify supervisors of his need for more time on projects. But these complaints relate to "conduct resulting from [Mr. Vangieson's] disability," and are therefore an illegitimate basis for termination. *Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001). For instance, it is unsurprising that Mr. Vangieson failed to notify supervisors of delays in his work, considering that his

disability hindered communication with supervisors in the first place. Therefore, assuming Mr. Vangieson needed an accommodation (which, as noted, should have been held a triable issue of fact), a jury could find that DCAA's failure to provide a reasonable accommodation was the primary reason for his eventual termination. *See id.* at 1140 ("The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability.").

Mr. Vangieson also presented "specific" and "substantial" circumstantial evidence to establish that DCAA's justifications were pretextual. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006). Mr. Vangieson's supervisors gave him "Fully Successful" ratings before he left on medical leave; then, when he returned, he was deemed "Unsuccessful," placed in a PIP, and subsequently fired. Mr. Vangieson testified that he was not offered training or substantive feedback during the PIP to improve his performance, notwithstanding the purpose of this period being to "improve" his performance. The record also reflects that Ms. Gift did not include in her PIP evaluation a "major assignment" that Mr. Vangieson completed during this period. **2**A reasonable jury could infer from all this that Ms. Gift had predetermined his termination. If we "view the facts and draw reasonable inferences in [his] favor," *O'Doan*, 991 F.3d at 1035, Mr. Vangieson has presented a triable issue of fact as to whether he was fired because of his

-4-

disability, and whether his alleged performance issues were caused by his disability. *Humphrey*, 239 F.3d at 1140.

This appeal is not about whether Mr. Vangieson would ultimately succeed on his claims of disability discrimination; it is about protecting a plaintiff's right to have a jury—not judges—decide disputed issues of fact. Today's decision deprives Mr. Vangieson of that right, so I dissent.