Walter **BATEMAN**, Plaintiff,

v.

**UNITED STATES POSTAL SERVICE,** et al., Defendants.

**No. C97–0030MMC.**

United States District Court, N.D. California.

March 29, 2001.

Kelechi Charles Emeziem, Emeziem & Ogbu, LLP, Oakland, CA, for plaintiff.

Michael Propst, U.S. Postal Service, Burlingame, CA, Mary Beth Uitti, U.S. Attorney's Office, Oakland, CA, Alex G. Tse, Robert S. Mueller, III, U.S. Attorney's Office, San Francisco, CA, for defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CHESNEY, District Judge.

Before the Court is defendant United States Postal Service's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The matter came on regularly for hearing on January 19, 2001. Kelechi Charles Emeziem of Emeziem & Ogbu, LLP, appeared for plaintiff Walter Bateman. Alex Tse, Assistant United States Attorney, appeared for defendant United States Postal Service.

At the January 19, 2001 hearing, the Court ordered the parties to file supplemental briefs, and continued the hearing to March 16, 2001. Having considered the supplemental papers submitted, the Court deems the matter appropriate for decision without further hearing, VACATES the hearing scheduled for March 16, 2001, and rules as follows.

## PROCEDURAL BACKGROUND

This action proceeds on plaintiff's First Amended Complaint ("FAC"), filed November 7, 1997. The only named defendant is the Postmaster of the United States Postal Service.

On May 6, 1998, upon motion filed by defendant, the Court dismissed all of plaintiff's causes of action, with the exception of plaintiff's federal claims of race discrimination, disability discrimination, and retaliation.

On August 7, 1998, defendant filed the instant motion for summary judgment. Plaintiff failed to file opposition. On September 3, 1998, the Court granted defendant's motion for summary judgment, finding defendant had established that the undisputed facts entitled it to judgment as a matter of law on the three remaining claims. Thereafter, judgment was entered in favor of defendant.

On November 5, 1998, plaintiff moved to set aside the order granting defendant's motion, and requested an opportunity to file an opposition brief. On February 3, 1999, the Court issued an order denying plaintiff's motion, from which plaintiff timely appealed. Upon review, the Ninth Circuit reversed and remanded with instructions to allow the opposition to be filed. On November 28, 2000, the Court set aside the order granting defendant's motion for summary judgment, vacated the judgment, and granted plaintiff the opportunity to file opposition to defendant's motion.

## FACTUAL BACKGROUND [1]

Plaintiff, an African–American male, was hired by defendant in 1988, and worked as a Laborer, Custodial Level 3, in the maintenance craft at the Postal Service's San Francisco Bulk Mail Facility in Richmond, California. (*See* Bateman Decl. at ¶ 2; Tse Decl., Ex. A. at 16–17; Connelly Decl. at ¶ 3.)

In 1989, plaintiff filed an Equal Employment Opportunity ("EEO") complaint against Aaron Johnson ("Johnson"), plant manager for maintenance operations, John

---

1. The following facts are either undisputed, or stated in the light most favorable to plaintiff, the non-moving party.

Clemons ("Clemons"), plaintiff's then-immediate supervisor, and David Burns ("Burns"), a supervisor. (*See* Bateman Decl. at ¶ 3.) In the EEO complaint, plaintiff alleged discrimination in the manner in which he was passed over for a position. (*See id.*) Plaintiff states that he won the case and was promoted with back pay. (*See id.*)

In February 1993, and then in March 1995, plaintiff had knee surgery. (*See id.* at ¶ 9.)[2] After the latter surgery, plaintiff requested accommodation by assignment to a "permanent position in the clerk craft," (*see id.* at ¶¶ 9, 11 and Ex. C), or, alternatively, assignment as a Maintenance Control Clerk. (*See* Tse Supp. Decl., Ex. A at 100:1–16.) Plaintiff's supervisor Robert Collins ("Collins") assigned plaintiff to light work duty in plaintiff's "regular maintenance custodial craft" from the date of his return to work after the March 1995 surgery to the last date of his employment with defendant. (*See* Collins Decl. at ¶¶ 5–9.)

On November 2, 1995, plaintiff's first-line supervisor was on leave, and as a result, Burns was acting as plaintiff's first-line supervisor. (*See* Burns Decl. at ¶ 4.) On November 3, 1995 plaintiff was working the "grave yard shift," 11:00 p.m. to 7:00 a.m., and at approximately 4:30 a.m., was working on a conveyer belt. (*See* Bateman Decl. at ¶ 14.) Later that morning, Jose Mallari ("Mallari"), a Postal Service employee, reported to Burns that plaintiff had approached Mallari and another employee, Herman Santos ("Santos"), and accused them of talking about plaintiff in Tagalog. (*See* Burns Decl. at ¶ 4.)[3] Mallari told Burns that plaintiff became hostile and began shoving Mallari, and that Mallari defended himself by pushing plaintiff back. (*See id.* at ¶ 5.) Mallari provided a written statement about the incident to Burns. (*See id.*, Ex. A.)

Pursuant to the Postal Service's "zero tolerance policy," an individual initiating a physical altercation or otherwise engaging in violent behavior must be removed from the Postal Service. (*See* Johnson Decl. at ¶ 6.)[4] It is Postal Service policy that all workplace incidents involving violence are to be investigated by the first-line supervisor on duty. (*See* Burns Decl. at ¶ 4.) With respect to allegations of workplace violence involving Postal Service employees, the employee's first-line supervisor is charged with preparing a recommendation regarding the event in question. (*See* Johnson Decl. at ¶ 6.) The recommendation is thereafter forwarded up the chain of command for action. (*See id.*)

Pursuant to the above-described Postal Service policy, Burns initiated an investigation of the incident involving plaintiff and Mallari the day after the incident. (*See* Burns Decl. at ¶ 5.) At Burns' request, Mallari and Santos provided written statements, both of which corroborated Mallari's description of the altercation. (*See id.* at ¶ 6.) To complete the investigation, Burns needed to interview Bateman. (*See id.*) Burns called plaintiff into Burn's

---

2. Although plaintiff declares that the second surgery occurred in May 1993, at the hearing held January 19, 2001, plaintiff's counsel clarified that plaintiff's second surgery occurred in May 1995.

3. Burns recalls the date as November 2, rather than November 3, 1995. The difference in the witnesses' declarations may be attributable to the fact plaintiff's shift spanned both dates.

4. Although plaintiff denies having any knowledge of the existence of defendant's "zero tolerance policy" while he was employed by defendant, (*see* Bateman Decl. at ¶ 26), plaintiff does not deny that such a policy existed. Moreover, some of the documents offered by plaintiff regarding altercations involving other employees reference the zero tolerance policy. (*See id.*, Ex. 11.)

office, along with plaintiff's regular supervisor. (*See id.* at ¶ 7; Bateman Decl. at ¶ 18.) At that time, according to Burns, Burns read to Bateman the statement prepared by Mallari, (*see* Burns Decl. at ¶ 7); according to plaintiff, Burns "questioned me about Mallari." (*See* Bateman Decl. at ¶ 18.) Plaintiff neither admitted nor denied the incident. (*See* Burns Decl. at ¶ 7.)

On November 15, 1995, Burns issued a Notice of Proposed Removal. (*See id.* at ¶ 8.) The Notice of Proposed Removal sets forth the charge, "Misconduct/Physical Altercation with Another Postal Employee while on Official Duty/Conduct Unbecoming of A Postal Officer." (*See id.,* Ex. C.) In accordance with the Notice of Proposed Removal, Burns recommended to his superior, Ben Fukumitsu ("Fukumitsu"), that plaintiff be removed. (*See id.* at ¶ 8.) The recommendation was based upon the statements of the two witnesses to the incident and the fact that plaintiff neither admitted nor denied that the incident took place. (*See id.*) Burns was aware both at the time the incident was reported and at the time of his recommendation that, three or four years prior, plaintiff had filed an EEO complaint against Burns. (*See id.* at ¶ 10.) Burns declares that such knowledge did not influence his recommendation, and that Burns believed he had no choice but to recommend removal in light of defendant's zero tolerance policy. (*See id.*)

On November 26, 1995, Burns gave plaintiff the Notice of Proposed Removal. (*See id.,* Ex. C.) The Notice of Proposed Removal, *inter alia,* informed plaintiff that he would be "removed from the Postal Service no sooner than thirty (30) days from receipt of this notice," and of his right to respond to the charge by (1) "answer[ing] this proposal within 10 calendar days from ... receipt of this letter, either in person [to Fukumitsu] or in writing or both," and, at plaintiff's election, (2) "furnish[ing] affidavits or other written materi-

al to ... Fukumitsu within 10 days from ... receipt of this letter." (*See id.*) After receiving the Notice of Proposed Removal, plaintiff gave his immediate supervisor his badge, and Burns stated that plaintiff "may get [his] belongings and leave," which plaintiff then did. (*See* Bateman Decl. at ¶ 20.) Plaintiff's last day of work was November 26, 1995. (*See* Collins Decl. at ¶ 3.) Plaintiff was placed on unpaid administrative leave the following day. (*See id.*)

After Fukumitsu received from Burns the recommendation and the statements of Mallari and Santos, Fukumitsu conducted his own investigation of the altercation. (*See* Fukumitsu Decl. at ¶¶ 3–4.) Specifically, he spoke to witnesses to the incident, including Santos, who Fukumitsu considered to be the most important witness as he was not involved in the actual physical altercation. (*See id.* at ¶ 4.) As a result of his investigation, Fukumitsu believed the Postal Service's "zero tolerance policy" required him to recommend plaintiff's removal. (*See id.* at ¶ 5.) Accordingly, Fukumitsu recommended to his supervisor, Johnson, that plaintiff be terminated from the Postal Service. (*See id.*) At the time of incident and his investigation and subsequent recommendation, Fukumitsu was unaware of plaintiff's prior EEO complaint. (*See id.* at ¶ 7.)

After consideration of the record, and in light of the Postal Service's "zero tolerance policy," Johnson concurred in the recommendations of Burns and Fukumitsu to remove plaintiff from the Postal Service. (*See* Johnson Decl. at ¶ 8.) On December 8, 1995, Johnson issued a letter of decision removing plaintiff from the Postal Service. (*See id.* at ¶ 7.) The removal was effective December 27, 1995. (*See* Collins Decl. at ¶ 3.)

On December 12, 1995, plaintiff filed an EEO Request for Counseling. (*See* Brown

Decl., Ex. A.) In his request, plaintiff alleged discrimination based on "race, hostile working environment, and slander of character," and that defendant had not responded to plaintiff's medical condition. (*See id.*)[5]

During an EEO counseling session in January 1996, plaintiff informed the counselor that he believed he was discriminated against in that he was removed from the Postal Service for fighting, while a Caucasian and an Hispanic employee involved in an allegedly more serious altercation were not removed. (*See* Tse Decl., Ex. A at 66.) Specifically, plaintiff told the counselor that Velda Martinez ("Martinez") and Leopold Quindor ("Quindor") were involved in a fight, but were suspended for one week, rather than removed from the Postal Service. (*See id.*) Neither Burns, Fukumitsu, nor Johnson was involved in the decision as to whether and in what manner to discipline Martinez and Quindor. (*See id.* at 70:20–71:6; Burns Decl. at ¶ 11; Fukumitsu Decl. at ¶ 8; Johnson Decl. at ¶ 9.)

In a decision dated December 5, 1996, issued in response to plaintiff's consultation with defendant's EEO Office, the Postal Service found that plaintiff "failed to prove a *prima facie* case based on any basis of discrimination or retaliation" in connection with his removal from the Postal Service. (*See* Tse Decl., Ex. A, Ex. 4 at 2.) The Postal Service also found that "assuming *arguendo* [plaintiff] is able to establish a *prima facie* case of discrimination or retaliation, the agency articulated a legitimate non-discriminatory reason for its actions, which [plaintiff] failed to show was pretextual." (*See id.* at 3.)

Plaintiff also invoked the grievance procedure provided for in the collective bargaining agreement governing his employment with the Postal Service. (*See* Tse Decl., Ex. A at 155 and Ex. 9 to Bateman Dep.) The grievance procedure culminated in arbitration, and the arbitrator found, by decision dated August 15, 1996, that plaintiff's removal from the Postal Service was proper. (*See id.*, Ex. A at 158 and Ex. 9 to Bateman Dep.)

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. The moving party need not produce admissible evidence showing the absence of a genuine issue of material fact when the nonmoving party has the burden of proof, but may discharge its burden simply by pointing out that there is an absence of evidence to support the nonmoving party's case. *See Celotex*, 477 U.S. at 324–25, 106 S.Ct. 2548. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by

---

**5.** Plaintiff's Request for Counseling does not include a claim that defendant removed him from employment in retaliation for prior EEO activity. (*See id.*) Defendant, however, provides a copy of a March 7, 1996 letter sent by the EEO Complaints Processing Center to plaintiff; in the letter, the EEO states that one of the bases of plaintiff's discrimination claim was "Retaliation (Prior EEO Activity)." (*See id.*, Ex. C.)

her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324, 106 S.Ct. 2548 (quoting Rule 56(c)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). When determining whether there is a genuine issue for trial, "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

## DISCUSSION

As stated above, plaintiff's three remaining claims are race discrimination, disability discrimination, and retaliation.

### A. Race Discrimination

In order to prevail on a claim of disparate treatment in violation of Title VII, a plaintiff must first establish a *prima facie* case sufficient to give rise to an inference of discrimination. *See Diaz v. American Telephone & Telegraph,* 752 F.2d 1356, 1358–59 (9th Cir.1985) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 807, 93 S.Ct. 1817, 1827, 36 L.Ed.2d 668 (1973)). Once the plaintiff has established a *prima facie* case of discrimination, "the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason" for the employer's action. *See Warren v. City of Carlsbad,* 58 F.3d 439, 442 (9th Cir.1995),

*cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

If the employer succeeds in producing evidence of a legitimate reason for the adverse employment action, the burden then shifts back to the plaintiff, and the plaintiff is required to present evidence showing that the employer's stated reasons for the rejection are pretextual, serving merely to "mask" an illegal motive. *See Brazil v. United States Dep't of the Navy,* 66 F.3d 193, 197 (9th Cir.1995), *cert. denied,* 517 U.S. 1103, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996). Once the burden shifts to the plaintiff, "[t]o avoid summary judgment, [a plaintiff] must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." *See Bradley v. Harcourt, Brace and Company,* 104 F.3d 267, 270 (9th Cir.1996) (internal quotation omitted). Rather, the plaintiff must produce specific, substantial evidence of pretext. *See id.* The plaintiff can meet this burden by "raising a genuine factual issue regarding the authenticity of the employer's stated motive." *See Washington v. Garrett,* 10 F.3d 1421, 1433 (9th Cir.1993) (holding evidence that defendant's proffered reason for termination was false, coupled with finding that plaintiff could establish prima facie racial discrimination case, sufficient to defeat defendant's motion for summary judgment).

In its September 3, 1998 order, the Court found that defendant had failed to show, as a matter of law, that plaintiff could not establish a prima facie case of race discrimination. (*See* Order Granting Def.'s Mot. for Summ. J. at 7:18–9:22.) The Court found, however, that defendant had articulated a legitimate, non-discriminatory reason for the removal, specifically defendant's conclusion that plaintiff had engaged in a physical attack at the workplace in violation of defendant's "zero tolerance policy" with respect to violence at

the workplace. (*See id.* at 9:23–10:12.) Accordingly, the burden now shifts to plaintiff to offer evidence of pretext.

In his opposition, plaintiff makes two arguments with respect to establishing pretext. First, plaintiff contends: "[D]efendant's employee, Burns, issued a request for disciplinary action on November 4, 1995 prior to any investigation, interview or statements[;][t]he fact is that Mallari never reported the incident until five days after the incident." (*See* Pl.'s P. & A. in Opp. to Def.'s Mot. for Summ. J. at 8:13–16.) [6] Plaintiff, however, offers no evidence to support any part of this assertion. The undisputed evidence is that Mallari reported the incident to Burns on the day it occurred, Burns began an investigation the following day, and issued his recommendation for disciplinary action on November 15, 1995.

Second, plaintiff argues that pretext can be inferred because Martinez and Quindor, two non-African-American employees, who were involved in a different workplace altercation, were not fired.[7] In the Court's order of September 3, 1998, the Court rejected defendant's argument that, because the decision as to what discipline to impose on those employees was made by supervisors other than those involved in the decision to remove plaintiff, Martinez and Quindor were not similarly situated to plaintiff. (*See* September 3, 1998 Order Granting Def.'s Mot. for Summ. J. at 8:27–9:19). At this stage of the burden-shifting process, however, because defendant has articulated a facially nondiscriminatory reason for its decision to terminate plaintiff's employment, plaintiff has the burden to offer evidence of disparity in defendant's application of the "zero tolerance policy." *See Equal Employment Opportunity Comm'n v. Flasher Co.,* 986 F.2d 1312, 1317–19 (10th Cir.1992) (holding that once employer "articulate[s] by evidence a facially nondiscriminatory reason for the termination," employee has burden to show "comparable discipline was not administered against" persons of other races "who engaged in conduct that was at least as serious" as the terminated employee's conduct). Here, defendant initially issued notices of proposed removal to both Martinez and Quindor, but settled a subsequent grievance proceeding by imposing a lesser discipline after determining that the incident was primarily verbal and thus did not fall within the "zero tolerance policy." (*See* Engkvist Decl. at ¶¶ 3–8.) Plaintiff has submitted no evidence to the contrary. Consequently, plaintiff fails to offer any evidence that defendant applied its "zero

---

**6.** Plaintiff further contends that at the arbitration hearing held after plaintiffs' removal from employment, "Mallari testified that David Burns gave him a letter to type up at home in his computer based on the alleged incident of November 3, 1995." (*See* Bateman Decl. at ¶ 31.) Plaintiff fails to explain this contention or its relevance. Moreover, plaintiff does not provide the transcript of the hearing, and thus offers no admissible evidence to prove what Mallari may have stated at the arbitration.

**7.** Plaintiff relies on three other workplace altercations, as to which plaintiff offers copies of various documents for the purpose of showing such altercations did not result in termination of employment. (*See* Bateman Decl., Ex. 11). Defendant's objection on grounds of hearsay, lack of authentication and relevance is SUSTAINED. Plaintiff offers no evidence at all as to the manner in which the documents were created. Moreover, one of the incidents is described as only a "verbal altercation," and at least one participant in another incident is described as not being the aggressor. Additionally, in each instance, the matter appears to have been grieved and resolved as part of the grievance process. Lastly, and most importantly, plaintiff offers no admissible evidence as to the race of the participants in any such altercation.

tolerance policy" differently towards members of races other than that of plaintiff.

Plaintiff makes no other argument in his opposition brief with respect to pretext. (*See* Pl.'s P. & A. in Opp. to Def.'s Mot. for Summ. J. at 8:8–23.) At the January 19, 2001 hearing, however, plaintiff's counsel argued that plaintiffs' declaration is sufficient to support a finding that plaintiff's removal was pretextual. The Court disagrees.

In his declaration, plaintiff denies touching Mallari in any manner and denies that he and Mallari had any type of altercation. (*See* Bateman Decl. at ¶ 14.) Whether plaintiff now denies touching Mallari is irrelevant, however, in light of plaintiff's failure to offer any evidence that he denied Mallari's accusation at any time prior to defendant's decision to terminate his employment.

Plaintiff also declares that Mallari never received medical treatment as a result of the alleged incident and that it was defendant's policy to take any employee injured during a workplace altercation to a hospital. (*See id.* at ¶¶ 29–30.) Plaintiff's declaration on this point does not assist plaintiff in establishing pretext. The nature of the encounter described by Mallari and Santos was not of the type likely to cause injury, let alone injury requiring medical intervention. Thus, any absence of injury is not evidence that defendant lacked a reasonable basis for determining that a physical altercation of the nature reported had occurred.[8]

Finally, plaintiff states it is his "understanding" that defendant's employees, in determining what type of discipline was appropriate, considered a "prior disciplinary that was over 4 years old to make their decision to terminate [his] employment," and that use of the prior disciplinary action violated the terms of an agreement between plaintiff's union and defendant. (*See id.* at ¶ 25.)[9] Plaintiff offers no evidence, however, that a prior disciplinary action was in fact considered, (*see id.*), and no reference to the prior disciplinary action is made in the Notice of Proposed Removal. (*See* Burns Decl., Ex. C.) Moreover, assuming *arguendo* that a prior incident was actually considered, in violation of the agreement, plaintiff has not shown how a trier of fact could reasonably find such consideration renders defendant's proffered reason for the termination pretextual, in light of defendant's "zero tolerance policy."

For the reasons stated above, the Court finds plaintiff has failed to meet his burden of producing evidence from which a trier of fact could find defendant's proffered reason for terminating plaintiff's employment was a pretext for race discrimination. Accordingly, defendant is entitled to summary judgment on plaintiff's race discrimination claim.

### B. Retaliation

In the FAC, plaintiff alleges that his removal from employment was in retaliation for his protected activities. Specifically, plaintiff alleges: "Defendant has discriminated against plaintiff in the terms

---

**8.** Assuming plaintiff is relying on any decision by defendant's Inspection Service not to further investigate the incident, (*see id.* at ¶ 24 and Ex. 9), such reliance is misplaced. Plaintiff fails to offer any evidence as to the role of the Inspection Service in the investigative process nor has plaintiff shown the Inspection Service reached any conclusion as to the sub-

ject incident, much less a conclusion contrary to that made by plaintiff's superiors.

**9.** The agreement relied on by plaintiff states "[t]he records of a disciplinary action shall not be considered in any subsequent disciplinary action if there has been no disciplinary action initiated against the employee for a period of two years." (*See id.*, Ex. 10.)

and conditions of his employment on the basis of his filing previous EEOC complaints against defendants and also for filing lawsuits against defendants."(*See* FAC at ¶ 46.)

█ As stated in the Court's September 3, 1998 order, "[t]he McDonnell Douglas order and allocation of proof that governs disparate treatment claims also governs retaliation claims." *See Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir. 1987). To establish a prima facie case of retaliation, plaintiff "must demonstrate (1) that [he] was engaged in protected activity/opposition, (2) that [he] suffered an adverse employment decision, and (3) that there was a causal connection between [his] activity and the employment decision." *See Folkerson v. Circus Circus Enterprises, Inc.,* 107 F.3d 754, 755 (9th Cir.1997).

Plaintiff filed his prior EEO complaint in 1989, naming, *inter alia,* Burns and Johnson. On December 12, 1990, plaintiff filed a civil action against, *inter alia,* Burns and Johnson, alleging retaliation based upon his filing the 1989 EEO complaint. (*See* Bateman Decl., Ex. 1.) Plaintiff's removal occurred in December 1995. Defendant argues plaintiff lacks evidence to prove the existence of a causal connection between his protected activity and the removal decision. Defendant further argues that, assuming plaintiff could establish a prima facie case, plaintiff lacks evidence to establish that defendant's proffered reason for the removal from employment was a pretext for unlawful retaliation.

In the Court's September 3, 1998 order, the Court concluded that defendant had established, in its moving papers, both that plaintiff lacked evidence of the required causal connection and evidence of pretext. (*See* Order Granting Def.'s Mot. for Summ. J. at 12:21–13:7.) Having reviewed plaintiff's evidence and argument, the Court adheres to its prior decision.

█ The only evidence offered by plaintiff not before the Court when it issued its September 3, 1998 order is that Johnson, in 1990, was aware of the 1989 EEO complaint. Such evidence is insufficient to prove retaliatory motive because the removal decision occurred approximately five years after plaintiff's protected activity. *See, e.g., Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 881 (9th Cir.1989) (holding in ERISA retaliation claim, no "causal connection" between use of sick leave and subsequent termination where use of sick leave occurred five years before termination). Further, as explained above, plaintiff lacks evidence to prove that defendant's proffered reason for his termination was pretextual. (*See* § A., *supra.*) Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claim.[10]

**C. Disability Discrimination**

Plaintiff's disability discrimination claim is based on two separate theories.[11] First, plaintiff claims that defendant failed to accommodate him after his knee surgery in March 1995. Second, plaintiff claims that his removal from employment was

10. Plaintiff also argues that defendant retaliated against him due to his participation in union activities. Such claim, however, was not alleged in plaintiff's FAC, and is not before the Court in the instant action.

11. Although the FAC alleges disability discrimination under Title VII, (see FAC at ¶ 43), such claim arises under the Rehabilitation

Act. *See Boyd v. United States Postal Service,* 752 F.2d 410, 413 (9th Cir.1985) (holding "section 501 [of the Rehabilitation Act] is the exclusive remedy for discrimination in employment by the Postal Service on the basis of handicap"). The rights and remedies available under Title VII, however, are "available to a person complaining of discrimination in violation of Section 501." *See id.*

due to discrimination based on his alleged disability.

### 1. Failure to Accommodate

#### a. Exhaustion

Defendant initially argues that, to the extent plaintiff's disability discrimination is based on a failure to accommodate, plaintiff has failed to exhaust his administrative remedies.[12] Defendant's argument is two-fold: (1) plaintiff never raised a failure to accommodate claim with an EEO counselor, and (2) even if such claim was made, it was untimely.[13]

■■■■ "To establish federal subject matter jurisdiction, [a plaintiff] is required to exhaust [his] EEOC administrative remedies before seeking federal adjudication of [his] claims." *Equal Employment Opportunity Comm'n v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994) (holding plaintiff exhausted her Title VII claim of discriminatory layoff by including that claim in her charge with the EEOC). A district court has jurisdiction over a claim of discrimination if "that claim fell within the scope of the EEOC's actual investigation or an 'EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *See id.* (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.1990)). Exhaustion must be timely; failure to bring a claim to the attention of an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory," *see* 29 C.F.R. § 1614.105(a)(1), is a bar to pursuing the claim in federal district court. *See Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir.1995) (holding § 1614.105(a)(1) is a statute of limitations).

■■■■ Plaintiff brought a failure to accommodate claim to the attention of an EEO counselor on December 12, 1995. Specifically, plaintiff stated that an employee named Andrew D. Andreas "was given a promotion based on his medical condition and management has failed to respond to mine." (*See* Brown Decl., Ex. A.) Further, when the EEO counselor sent plaintiff a letter providing plaintiff an opportunity to comment upon the proposed "scope of the investigation," (*see id.*, Ex. C.), plaintiff responded by affidavit stating his doctor had made requests for accommodation over an eight-year period, but that "still at this time management has fail[ed] to respond." (*See* Bateman Supp. Decl. at ¶ 15 and Ex. D.) The assigned EEO investigator thereafter requested that plaintiff answer a number of questions, including "what accommodation did you request," and "who denied the accommodation," thus indicating that the failure to accommodate claim was within the scope of the actual investigation. (*See id.* at ¶ 13 and Ex. G.) Accordingly, the Court finds that plaintiff has exhausted his administrative remedies as to his failure to accommodate claim.

■■■■ With respect to the timing of plaintiff's claim, defendant argues that because plaintiff testified at his deposition that he believed defendant discriminated against him on the basis of his disability in March 1995, (*see* Tse Decl., Ex. A at 120:2–5), his EEO Request for Counseling in December 1995 was untimely. Where, however, a claimant contends that the discriminatory act in question was continuing in nature, the claimant has timely exhaust-

---

**12.** Defendant does not raise failure to exhaust as a defense to any of plaintiff's other claims.

**13.** In its September 3, 1998 Order, the Court found defendant had failed to establish that plaintiff's disability discrimination claim was

time-barred. (*See* Order Granting Def.'s Mot. for Summ. J. at 10:14–11:7.) At that time, however, the Court did not consider defendant's exhaustion argument as it pertained to plaintiff's claim based on failure to accommodate.

ed if the EEO claim "indicat[es] an allegation of a continuing violation." *See Sosa,* 920 F.2d at 1457–58 (holding district court had jurisdiction over plaintiff's retaliation claim based on continuing violation theory where plaintiff alleged "pattern and practice" of retaliation in EEO claim). Here, after plaintiff had been terminated, plaintiff claimed that another employee's disability had been accommodated, while defendant "still at this time ... has fail[ed] to respond" to plaintiff's requests. Such contention is reasonably construed as a claim of failure to accommodate continuing to the time of termination. *See id.* at 1458 (holding EEO charges must be construed liberally; EEOC need only be apprised in general terms of the alleged discriminatory acts). Accordingly, the Court finds plaintiff timely exhausted his claim that defendant failed to accommodate his disability during the period from March 1995 to the date of his termination.

### b. Merits

■ The Rehabilitation Act requires that government agencies reasonably accommodate an employee's disability. *See* 29 U.S.C. § 794; *Mustafa v. Clark County Sch. Dist.,* 157 F.3d 1169, 1176 (9th Cir. 1998). In a reasonable accommodation claim, the plaintiff bears the initial burden to show that his "suggested accommodation was reasonable." *See id.* If plaintiff meets the initial burden, the defendant employer must show that the suggested accommodation was unreasonable. *See id.* at 1176–77.

■ Here, defendant has offered evidence that after plaintiff's March 1995 knee surgery, in accordance with the request of plaintiff's physician, plaintiff was placed on light duty, his duties were modified to require the least amount of standing, his assigned area of cleaning was limited, and he was given flexibility to sit or stand as he felt the need to do. (*See* Collins Decl. at ¶¶ 5,6.) Thereafter, on May 1, 1995, plaintiff's doctor modified the work restrictions,[14] and in accordance with the modifications, plaintiff continued to perform light duty tasks. (*See id.* at ¶ 8.) "From his return to work in April 1995 until his last day of work on November 26, 1995, [plaintiff] was assigned only those light work duties that complied with the medical restrictions of his physician." (*Id.* at ¶ 9.)

Plaintiff offers no evidence to the contrary.[15] Plaintiff has offered no evidence that the accommodations provided failed to meet the concerns of his physician. Indeed, plaintiff testified at deposition that he was not working above his physician's lifting and walking restrictions. (*See* Tse Supp. Decl., Ex. A at 86:3–87:6.) Instead, plaintiff argues that the accommodation he should have been given was an assignment to one of two other jobs. Plaintiff, however, fails to offer any authority for the proposition that if a disabled employee's current position is modified such that all medical restrictions are fully accommodated, plaintiff may nevertheless proceed with a failure to accommodate claim on the theory that different accommodations were also possible.

Even if such a theory were cognizable, plaintiff has not offered evidence that his

---

14. After examining plaintiff on May 1, 1995, plaintiff's physician signed a Duty Status Report for Light Duty, adding restrictions on both "repeated bending" and sitting to no more than four hours per day, (*see id.,* Ex. C), and changing the restriction on standing from one hour per day to two hours per day. (*See id.*)

15. Although plaintiff declares that defendant "never modified [his] job duties," read in context, this statement refers only to plaintiff's request for a permanent assignment to the clerk craft. (*See* Bateman Supp. Decl. at ¶ 9 and Ex. C.)

requested alternative accommodations were reasonable. As noted, plaintiff requested that he be assigned to a "permanent position in the clerk craft." (*See* Bateman Decl., Ex. 3.) Defendant has offered evidence, however, that the physical requirements for clerk craft positions include the ability to lift 70 pounds. (*See* Connelly Decl. at ¶ 9.) Although plaintiff declares that there are jobs in the clerk craft that did not require him to lift 70 pounds, (*see* Bateman Supp. Decl. at ¶ 8), plaintiff fails to elaborate or provide a foundation for this assertion. Plaintiff also requested that he be assigned to the position of Maintenance Control Clerk. (*See* Tse Decl., Ex. A at 100:1–101:3.) In that regard, defendant has offered evidence that the position of Maintenance Control Clerk requires that the applicant pass a "CBT 714 typing test" and that plaintiff failed such a test on February 23, 1995. (*See* Pacheco Decl. at ¶¶ 3–5 and Ex. A.) Plaintiff offers no relevant evidence to the contrary.[16] Consequently, plaintiff has failed to show that his assignment to the clerk craft or to a Maintenance Control Clerk position was a reasonable accommodation.[17]

Accordingly, defendant is entitled to summary judgment on plaintiff's reasonable accommodation claim.

### 2. Removal from Employment

In its order of September 3, 1998, the Court found that, assuming *arguendo* plaintiff could establish a prima facie case of disability discrimination, defendant had offered a legitimate reason for removing plaintiff from employment. Because plaintiff, at that time, failed to file any opposition, much less offer evidence of pretext, the Court granted defendant summary judgment on this claim. Plaintiff has now offered evidence. For the reasons discussed above, however, such evidence is insufficient to establish pretext. Accordingly, defendant is entitled to summary judgment on plaintiff's disability discrimination claim to the extent it is based on removal from employment.

### CONCLUSION

For the reasons stated, defendant's motion for summary judgment is hereby GRANTED.

The Clerk shall close the file.

### IT IS SO ORDERED.

---

16. Plaintiff relies on a statement defendant made in July 1994 while settling a labor grievance that plaintiff was "a qualified back-up Maintenance Control Clerk." (*See* Bateman Supp. Decl., Ex. B.) Plaintiff fails, however, to offer evidence that the position of "back-up Maintenance Control Clerk" has the same responsibilities as Maintenance Control Clerk.

17. Defendant has argued that it would be required to violate the terms of its collective bargaining agreement ("CBA") if it were to have assigned plaintiff to one of the jobs he requested. Defendant, however, has provided insufficient evidence to support this alternative argument. With respect to a position in the clerk craft, defendant argues that defendant had no duty under the CBA to grant such a request. (*See* Connelly Decl. at ¶ 8.) The argument misses the point, as defendant does not contend the CBA would have been violated had defendant chosen to assign plaintiff to a clerk craft position, only that it was not required by the CBA to make such an assignment. With respect to the position of Maintenance Control Clerk, defendant cites section 38.5B of the CBA as requiring that such position be filled only on the basis of seniority. (*See id.* at ¶ 7 and Ex. A.) The position of Maintenance Control Clerk is not listed in section 38.5B, and defendant has not provided the Court with any excerpt from the CBA containing such requirement.