Filed 3/3/14  McCauley v. County of San Joaquin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)


| | |
|---|---|
| CARMELITA McCAULEY, | C070503 |
| Plaintiff and Appellant, | (Super. Ct. No. 39-2009-00227632-CU-WT-STK) |
| v. | |
| COUNTY OF SAN JOAQUIN et al., | |
| Defendants and Respondents. | |


In this employment discrimination action, the trial court granted summary judgment in favor of defendants County of San Joaquin (County), Kenneth B. Cohen, Glenda Breiling, Traci Jackson, Stacey Hernandez, Kathy Lopez, and Dina Jose, on the ground plaintiff Carmelita McCauley "produced no evidence from which a triable issue of fact can be found.  There is no indication of any racial motivation, or other discriminatory motivation, for Defendants' actions.  <u>All</u> of the evidence, including that produced by Plaintiff, demonstrates that Defendant COUNTY terminated Plaintiff's employment for a legitimate, non-discriminatory reason."

1

Appealing from the resulting judgment, plaintiff ignores the fact the trial court sustained objections to much of the evidence she submitted in opposition to the motion for summary judgment and fails to challenge those rulings on appeal.

We conclude, as did the trial court, that plaintiff has failed to produce any admissible evidence that would support a finding that defendants' complained of actions were due to plaintiff's age, race, national origin, sex, or any other protected status. Defendants set forth a legitimate, nondiscriminatory reason for plaintiff's termination, and plaintiff has failed to point to any admissible evidence that defendants' stated reason was not the real reason for plaintiff's termination but a pretext for discrimination. Accordingly, we shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 1989, at the age of 40, plaintiff, a Filipino woman, was hired as a part-time medical assistant by San Joaquin County Health Care Services to work at the county jail in French Camp. In 2005 plaintiff, at the age of 57 and at the urging of Glenda Breiling, Deputy Director of San Joaquin County Correctional Health Care, applied for and was given a full-time position. From 2006 until her dismissal in July 2009 plaintiff reported directly to Traci Jackson, the charge nurse. During that same time period, Stacey Hernandez was the nurse manager.

On February 11, 2009, Jackson and Hernandez met with plaintiff concerning a report that plaintiff had referred to four of her superiors, including Breiling, Jackson, and Hernandez, as "white bitches." Plaintiff denied the allegation, and Hernandez refused to tell her who had made it.

Upset by the allegation, the next morning, February 12, 2009, plaintiff called in sick to work and went to see a doctor, who took her off work for two days. After leaving the doctor's office, plaintiff and her husband went to the jail to turn in a note from plaintiff's doctor and to obtain workers' compensation forms. The jail is a locked security facility; only authorized members of the public are allowed to enter. Plaintiff

2

understood that correctional healthcare employees, like her, were required to obtain permission from a manager before bringing a nonemployee civilian into the medical administration office at the jail.

Plaintiff and her husband entered the jail lobby at about 11:00 a.m. and approached the Public Screening Officer's (PSO) desk, where PSO Joanne Ravetti was working. Although Ravetti was unable to contact the duty sergeant, she decided to allow plaintiff's husband to enter because plaintiff's husband is a retired deputy sheriff, and she knew him.

After entering the building, plaintiff and her husband proceeded to the medical administration office. Once there, plaintiff asked Jackson for workers' compensation forms, and Jackson accompanied plaintiff to Hernandez's office in the clinic, where the forms were kept. Meanwhile, plaintiff's husband talked to clinic medical assistant Linda Retzlaff. He told Retzlaff he was there as plaintiff's representative, not as her husband. He twice asked Retzlaff if she knew who Breiling's boss was, and Retzlaff twice responded "no." After Jackson handed plaintiff the workers' compensation forms, plaintiff and her husband left. Plaintiff did not obtain permission from a manager before allowing her husband to accompany her into the medical administration office.

Breiling notified the Facilities Lieutenant Dina Jose that plaintiff, a civilian employee, and her husband, an unauthorized individual, were in the medical clinic, which is within the secure perimeter of the jail complex. Jose went to the medical administration office and spoke to Hernandez, Jackson, and Retzlaff. Based on her conversations with them, Jose concluded plaintiff's husband "threw his weight as a retired deputy sheriff around by leaning against the clinic counter[,] demanding the name of Deputy Director Glenda Breiling's boss, showing his anger by the loud level and inflection of his voice, and projecting intimidation towards the nursing staff." After obtaining the concurrence of her captain, Jose revoked plaintiff's security clearance. A week or two later, Ravetti was disciplined for allowing plaintiff's husband into the jail.

3

Jackson also was disciplined for poor judgment in allowing plaintiff's husband into the medical administration office and clinic.

On February 13, 2009, plaintiff arrived at the medical administration office to drop off some workers' compensation forms to be completed by the department manager. When she returned later that day to pick up the completed forms, Breiling asked plaintiff, " 'And what is this form for?' " Plaintiff responded, " 'If you have any more question[s], you can ask my lawyer.' " Breiling advised plaintiff that, as a supervisor, Breiling could speak to an employee at any time and asked plaintiff why she brought her angry husband to the jail the day before. Plaintiff responded that her husband was not angry, and Breiling told her that witnesses felt otherwise. Plaintiff refused to discuss the matter further, and Breiling advised her that her security clearance had been revoked and asked for her badge and keys.

On February 16, 2009, Breiling placed plaintiff on paid administrative leave.

In her employee accident report, plaintiff claimed she suffered emotional distress due to a hostile work environment for minorities. County's Equal Employment Opportunity (EEO) office was notified of plaintiff's complaint, and an EEO analyst attempted to contact plaintiff about her complaint by telephoning her home about three times, leaving his name and position, and asking plaintiff to return his calls. Plaintiff failed to do so.

On February 20, 2009, the EEO program manager sent plaintiff a letter, stating in relevant part: ". . . I have been advised that you may believe that you are a victim of discrimination in your workplace . . . . [¶] This is to inform you that the County has an internal process to resolve complaints pertaining to discrimination and harassment. Allegations of discrimination and harassment are processed according to Civil Service Rule 20 (Rule 20). A copy of Rule 20 is enclosed for your convenience. [¶] If, after reviewing the enclosed information, you would like to pursue this matter as a Rule 20 complaint, or if you have any questions or concerns, please contact me . . . ." Plaintiff

4

never responded to this letter, or otherwise pursued a Rule 20 complaint under San Joaquin County Civil Service Rules, rule 20 (as eff. Sept. 1, 2003; hereinafter Rule 20).[1]

On March 31, 2009, an inquiry meeting was held to investigate allegations that plaintiff referred to her superiors as "white bitches" and violated "policy" by bringing her husband into the medical administration office and clinic on February 12, 2009. Plaintiff arrived at the meeting with her attorney Daniel Mitchell and a court reporter. Mitchell took the position the meeting must be officially reported and transcribed. On the advice of Labor Relations's and County Counsel's offices, Kathy Lopez, the personnel analyst leading the inquiry, advised Mitchell the meeting would not be recorded but indicated Mitchell and plaintiff could take notes. Lopez also advised plaintiff that if she refused to participate in the interview, her refusal would be regarded as insubordination and could lead to disciplinary action, including proceeding with a notice of intent to dismiss. Mitchell responded, " 'Just mail it,' " and he and plaintiff left.

On June 3, 2009, a second inquiry meeting was held. Mitchell again took the position the meeting must be transcribed by a court reporter, and Lopez again advised him that no recording would be permitted. Lopez also admonished plaintiff that her refusal to answer questions would be considered insubordination and could result in disciplinary action. Plaintiff said she understood and left.

---

[1] Among other things, Rule 20 ("Discrimination Prohibited") sets forth the County's procedures for pursuing discrimination complaints. It states in pertinent part: "Prior to the filing of a formal complaint, an employee alleging discrimination in violation of this Rule shall report the discrimination to the Department EEO Coordinator (Coordinator). Complaints must be reported within sixty (60) days of the date the alleged discrimination occurred. [¶] . . . [¶] If a discrimination complaint is not resolved through the informal complaint process, or if the Complainant is not satisfied with the results of the informal complaint process, the Complainant may file a formal written complaint with the EEO Office within fifteen (15) days of notice of the results of the informal complaint process."

On June 9, 2009, plaintiff was served with a notice of intent to dismiss. The six-page notice set forth the basis of the intended action, i.e. bringing an unauthorized visitor into the secured correctional healthcare department without prior authorization and refusing to answer questions or participate in the inquiry interviews, listed out the various rules, polices, and standards of conduct plaintiff was charged with violating, and detailed each of the incidents leading to the intended action. Copies of the various documents upon which the intended action were based were enclosed for plaintiff's reference.

On June 15, 2009, plaintiff, through her attorney, requested various documents from County, and County provided several documents, including: witness statements from Jackson and Retzlaff; a correctional healthcare training notification regarding "Mandatory Civilian Security Training Refresher," dated March 30, 2005; plaintiff's executed acknowledgement of receipt of standards of appropriate conduct memorandum, County's harassment-free work environment policy, County's sexual harassment in the workplace pamphlet, and State of California discrimination is against the law pamphlet; an email from Jose to Breiling concerning the incident at the jail on February 12, 2009; and County's work rules.

On June 29, 2005, plaintiff demanded a "*Skelly* hearing"[2] and requested additional documents "relate[d] to the proposed charges," including plaintiff's entire personnel file. County denied her request for additional documents, explaining that a *Skelly* hearing is not an adversary proceeding where the employee and County call witnesses to testify and offer documentary evidence.

On July 15, 2009, plaintiff withdrew her request for a *Skelly* hearing, and on July 16, 2009, an order of dismissal was issued. Although the order stated that it was based on plaintiff bringing an unauthorized visitor into the jail without prior authorization and

---

[2]    *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*).

failing to answer questions at the investigatory interviews, Kenneth B. Cohen, Director of San Joaquin County Health Care Services and the person who directed the order of dismissal be issued, explained that plaintiff's "persistent insubordination by refusing to first answer questions from her department manager and supervisors then by refusing to answer questions at two separate investigative inquiry meetings was paramount in supporting her termination, in my mind." According to Cohen, had plaintiff "cooperated and participated in the department investigative inquiry meetings, she may or may [not] have faced some level of discipline but would not have been insubordinate and, thus, would not have been terminated."

On October 13, 2009, plaintiff initiated the instant action, claiming she was terminated due to her "sex, age, race/color, national origin/ancestry, marital status and association." In the operative third amended complaint, plaintiff asserts the following causes of action against County: (1) employment discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), title VII of the Civil Rights Act of 1964 (42 U.S.C.S. § 2000e et seq.; hereinafter Title VII); the Civil Rights Act of 1991 (Pub.L. No. 102-166 (Nov. 21, 1991) 105 Stat. 1071; see also 42 U.S.C.S. § 1981; hereinafter section 1981), the Civil Rights Act of 1871 (Act of Apr. 20, 1871, ch. 22, § 1, 17 Stat. 13; see also 42 U.S.C.S. § 1983; hereinafter section 1983), the Civil Rights Act of 1866 (Act of Apr. 9, 1866, ch. 31, § 3, 14 Stat. 27; see also 42 U.S.C.S. § 1988; hereinafter section 1988), and article I, section 31 of the California Constitution; (2) wrongful termination in violation of public policy; (3) retaliation in violation of FEHA, Title VII, sections 1981, 1983, and 1988, and article I, section 31 of the California Constitution; (4) deprivation of civil rights in violation of sections 1981, 1983, and 1988; (5) breach of contract; (6) breach of the implied covenant of good faith and fair dealing; and (7) intentional infliction of emotional distress. Only the fourth cause of action is brought against the individual defendants.

7

Prior to filing the instant action, plaintiff filed a governmental claim with County. (Gov. Code, § 810 et seq.) She also filed a complaint with the Department of Fair Employment and Housing and received a notice of case closure/right to sue notice on September 9, 2009.

Defendants moved for summary judgment, or in the alternative summary adjudication, on the ground there are no triable issues as to any material fact, and defendants are entitled to judgment as a matter of law. (Code Civ. Proc., § 437c.) The trial court granted summary judgment in favor of defendants, concluding, among other things, "[t]here is no indication of any racial motivation, or other discriminatory motivation, for Defendants' actions."

## DISCUSSION

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers *except that to which objections have been made and sustained*. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*), italics added.)

Here, the trial court sustained many of defendants' objections to plaintiff's evidence. In particular, the trial court sustained objections to large sections of plaintiff's declaration, and nearly all of the declarations of Manuel Nacar and Fe Brown. Indeed, as discussed in more detail below, most of plaintiff's citations to the record are to declaration testimony the trial court ruled is inadmissible. Plaintiff does not challenge those rulings on appeal. Thus, any issues concerning the correctness of those rulings have been forfeited, and we are precluded from considering such evidence on appeal.

8

(*Roe v. McDonald's Corp.* (2008) 129 Cal.App.4th 1107, 1113; see also *Guz, supra,* 24 Cal.4th at p. 334.)

I

Summary Judgment Was Properly Entered as to Plaintiff's First Cause of Action for Employment Discrimination Because Plaintiff Has Failed to Produce Any Admissible Evidence Showing She Was Terminated for a Discriminatory Purpose

*A. Plaintiff's Claims Under FEHA and Title VII*

When analyzing claims of disparate treatment in employment under FEHA, we apply the same legal principles as those applicable in a Title VII case. (*Guz, supra,* 24 Cal.4th at p. 354.)[3] In particular, we apply the burden-shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668] (*McDonnell Douglas*). (*Guz*, at p. 354.)

"At trial, the *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination. . . . While the plaintiff's prima facie burden is 'not onerous' [citation], [s]he must at least show ' "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion . . . .' [Citation]." [Citation.]' [Citations.] [¶] . . . [¶]

"If, at trial, the plaintiff establishes a prima facie case, a presumption of discrimination arises. [Citations.] This presumption, though 'rebuttable,' is 'legally mandatory.' [Citations.] Thus, in a trial, '[i]f the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.' [Citations.]

"Accordingly, at this trial stage, the burden shifts to the employer to rebut the

---

[3]  " 'Disparate treatment' " means the employer intentionally discriminated against the plaintiff based on her status in some protected category. (*Guz, supra,* 24 Cal.4th at p. 354, fn. 20.)

9

presumption by producing admissible evidence, sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer],' that its action was taken for a legitimate, nondiscriminatory reason. [Citations.]

"If the employer sustains this burden, the presumption of discrimination disappears. [Citation.] The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." (*Guz, supra,* 24 Cal.4th at pp. 354-356, fn. omitted.)

Here, we shall assume for the sake of argument that plaintiff met her initial burden of establishing a prima facie case of discrimination. As to the second prong of the *McDonnell Douglas* test, County presented evidence (primarily through the declarations of Cohen, Jackson, Jose, and Hernandez) of a legitimate, nondiscriminatory reason for terminating plaintiff, i.e. her persistent insubordination by refusing to answer questions concerning her workplace conduct.

A public employee's failure to answer questions about her job performance is a legitimate basis for termination "so long as the employee is not required, on pain of dismissal, to *waive* the constitutional protection against criminal use of those answers." (*Spielbauer v. County of Santa Clara* (2009) 45 Cal.4th 704, 710, 725.) Here, plaintiff was not asked to waive her federal Fifth Amendment right against self-incrimination. Indeed, the allegations against her were not criminal in nature. Accordingly, she had a duty to answer questions concerning allegations she referred to her superiors as "white bitches" and allowed her husband to enter the jail without prior authorization, and it is undisputed she refused to do so.

To the extent plaintiff contends she had a right to additional discovery or a "Weingarten stenographic record," before she was obligated to answer any questions concerning the allegations against her, her contention fails. While plaintiff fails to cite any legal authority in support of her contention, her use of the phrase "Weingarten stenographic record" in her opening brief suggests she is relying on the United States

10

Supreme Court's seminal decision in *National Labor Relations Board v. Weingarten* (1975) 420 U.S. 251 [43 L.Ed.2d 171] (*Weingarten*) in support of her assertion she was entitled to have the investigatory interviews recorded. *Weingarten* holds that an employee has a statutory right under section 7 of the National Labor Relations Board Act (29 U.S.C.S. § 157) "to the presence of a union representative at an investigatory interview in which the risk of discipline reasonably inheres . . . ." (*Weingarten*, at p. 262.) *Weingarten* has nothing to do with a stenographic or any other type of record; thus, it is of no assistance to her. To the extent it is relevant, plaintiff was represented by counsel at both investigatory interviews.

In *Skelly*, our Supreme Court held that while "due process does not require the state to provide the employee with a full trial-type evidentiary hearing prior to the initial taking of punitive action," it does mandate, at a minimum, "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Skelly, supra*, 15 Cal.3d at p. 215.) As detailed above, plaintiff was given a notice of intent to dismiss, which in addition to providing her with notice of the intended action, set forth the reasons therefore, and included a copy of the charges and materials upon which the action is based. In addition, plaintiff was provided with an opportunity to respond but elected not to do so. She was entitled to no more. (See *Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1280.)

Because County satisfied its burden of providing a valid, nondiscriminatory reason for plaintiff's termination, the burden shifted back to plaintiff to "produce substantial responsive evidence to show that [County's] ostensible motive was pretextual; that is, 'that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence.' [Citation.]" (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 (*King*).) Plaintiff's subjective beliefs "do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*Ibid.*)

11

Moreover, "plaintiff's evidence must relate to the motivation of the decision makers to prove, by nonspeculative evidence, an actual causal link between prohibited motivation and termination." (*Id.* at pp. 433-434.)

In her opening brief, plaintiff cites "the pattern and practice of County and its managers in dealing with minority staff; the declarations of minority staff on this subject; the demonstrated hostility of the minority staff to the management team; the circulation and implementation of a policy denying Filipinos an opportunity to speak their own language, and County's denials in that regard; the creation of a proof of illness policy that required minorities to obtain proof of illness before they were allowed sick leave; [and] the implementation of word of mouth and selective promotions within the department for non-minority friends of . . . Hernandez" as evidence of a discriminatory motive. Plaintiff, however, ignores the fact the trial court sustained defendants' objections to nearly all of the evidence upon which she relies, and she does not challenge those rulings on appeal. Accordingly, we must disregard the excluded items. (*Guz*, *supra*, 24 Cal.4th at p. 334; see also *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1015.)

Plaintiff is left with her contention that five to eight years prior to her termination, Breiling distributed a memorandum specifically prohibiting employees from speaking Tagalog and all Filipino dialects. County denies such a memorandum ever existed, and plaintiff has not produced it.[4] Nevertheless, even assuming such a memorandum did exist, its distribution in 2005 or earlier is too remote to be causally related to plaintiff's 2009 termination. (See *King, supra,* 152 Cal.App.4th at pp. 433-434.)

To the extent plaintiff relies on defendants' alleged suppression of an investigation required under Rule 20 as evidence of discrimination, her allegation is not supported in

---

[4]  In her deposition, Breiling stated that she had "verbally requested nurses and staff to speak English while on the job so everyone can understand each other and communicate effectively to provide quality care to patients."

12

the record. It is undisputed representatives from the EEO office made numerous attempts to contact plaintiff concerning her claim that she worked in a hostile work environment. Indeed, the program manager wrote to plaintiff specifically advising her of her rights under Rule 20 and enclosed a copy of the same, which plainly states that "[c]omplaints must be reported within sixty (60) days of the date [of] the alleged discrimination." It is undisputed that plaintiff never responded to the program manager's letter, and there is no evidence plaintiff otherwise pursued a complaint in accordance with Rule 20.

In sum, plaintiff has failed to place County's credible and sufficient showing of innocent motive in material dispute by raising a triable issue, i.e., a permissible inference, that County did not terminate her for failing to participate in the investigatory interviews, but in fact, acted for a discriminatory purpose.[5] (*Guz*, supra, 24 Cal.4th at p. 362.)

*B. Plaintiff's Claims Under Article I, Section 31, Subdivision (a) of the California Constitution*

Article I, section 31, subdivision (a) of the California Constitution provides: "The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting." As previously discussed, plaintiff has failed to produce any admissible evidence of a discriminatory link between her termination and her race, sex, color, ethnicity, or national origin. Accordingly, her claim that she was discriminated against in violation of article I, section 31, subdivision (a) of the California Constitution fails.

---

[5]   To the extent plaintiff claims she was discriminated against for associating with her husband, her claim fails for the additional reason that she has failed to introduce any evidence that her husband is a member of a protected class. (Gov. Code, § 12926, subd. (o); *Barrett v. Whirlpool* (6th Cir. 2009) 556 F.3d 502, 511-512 [Title VII and Section 1981 forbid discrimination on the basis of association with or advocacy for a protected party].)

*C. Plaintiff's Claims Under Sections 1981, 1983, and 1988*

Plaintiff's claims under sections 1981, 1983, and 1988 are addressed in section IV, *post*, at page 15.

II

Summary Judgment Was Properly Entered as to Plaintiff's Second Cause of Action for Wrongful Termination in Violation of Public Policy Because Plaintiff Has Failed to Produce Any Admissible Evidence That Would Support a Finding She Was Terminated for a Discriminatory Purpose

Plaintiff's second cause of action alleges she was wrongfully terminated in violation of public policy in that a determining and motivating factor in the decision to terminate her was (1) her "age, race/color, national origin/ancestry, and association," and (2) a desire to retaliate against her because she sought to recover workers' compensation benefits and filed a government tort claim. Like the first cause of action, this cause of action is subject to the *McDonnell Douglas* framework. (*Loggins v. Kaiser Permanente International* (2007) 151 Cal.App.4th 1102, 1108-1109.) As stated above, County set forth a legitimate, nondiscriminatory reason for plaintiff's termination, and plaintiff has failed to point to any admissible evidence that County's stated reason was not the real reason for her termination but a pretext for discrimination. Accordingly, summary judgment was properly entered as to plaintiff's second cause of action.

III

Summary Judgment Was Properly Entered as to Plaintiff's Third Cause of Action for Retaliation Because Plaintiff Has Failed to Produce Any Admissible Evidence That Would Support a Finding She Was Terminated for a Discriminatory Purpose

Plaintiff's third cause of action alleges she was terminated in retaliation for objecting to "County charging [her] with misconduct in uttering derogatory comments" and "protesting County's fabricated, vague, nebulous and unsupported claims" related to plaintiff's husband entering the jail on February 12, 2009, in violation of FEHA; Title VII; sections 1981, 1983, 1988; and article I, section 31 of the California Constitution. Like the previous causes of action, plaintiff's retaliation cause of action is subject to the

14

*McDonnell Douglas* framework. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) As before, County set forth a legitimate, nondiscriminatory reason for plaintiff's termination, and plaintiff has failed to point to any admissible evidence that County's stated reason was not the real reason for plaintiff's termination but a pretext for discrimination. Accordingly, summary judgment was properly entered as to plaintiff's third cause of action.

IV

Summary Judgment Was Properly Entered as to Plaintiff's Fourth Cause of Action for Deprivation of Her Civil Rights in Violation of Sections 1981, 1983, and 1988 Because Plaintiff Has Failed to Produce Any Admissible Evidence of Discrimination or Constitutional Violation

In her fourth cause of action, plaintiff alleges defendants deprived her of her civil rights in violation of sections 1981 and 1983 "in that [she] was denied equal employment opportunities . . . when as a pretext of eliminating minority employees over the age of 40, she was falsely charged and intimidated by County and the Individual Defendants who each participated in fabricated, vague, nebulous and unsupported claimed violations of Civil Service Rule 18." Plaintiff seeks attorneys' fees under section 1988.

Section 1981 states in pertinent part: "Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." (42 U.S.C.S. § 1981(a).)

Section 1983 reads in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

15

action at law, suit in equity, or other proper proceeding for redress . . . ."  (42 U.S.C.S § 1983.)

Section 1988 provides in pertinent part:  "In any action or proceeding to enforce a provision of sections . . . [1981-1983] . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."  (42 U.S.C.S. § 1988(b).)

Analysis of employment discrimination claims under sections 1981 and 1983 follows the same legal standards used in analyzing claims of racial discrimination under Title VII.  (*Surrell v. California Water Service Co.* (9th Cir. 2008) 518 F.3d 1097, 1103; *Mustafa v. Clark County School District* (9th Cir. 1998) 157 F.3d 1169, 1180, fn. 11 (*Mustafa*).)  To prevail under sections 1981 and 1983, plaintiff must prove defendants acted with the intent to discriminate.  (*Mustafa, supra,* 157 F.3d at p. 1180.)  As previously discussed, County set forth a legitimate, nondiscriminatory reason for plaintiff's termination, and plaintiff has failed to point to any admissible evidence that County's stated reason was not the real reason for her termination but a pretext for discrimination.

Plaintiff's section 1983 claim fails for the additional reason that plaintiff has failed to point to any admissible evidence suggesting her constitutional rights have been violated.  (42 U.S.C.S. §§ 1981, 1983.)  To the extent plaintiff claims she was deprived of her right to due process under the Fourteenth Amendment of the United States Constitution because she was not allowed to record the inquiry interviews and was not provided with additional discovery during the pre-removal process, her claim fails for the reasons set forth in section I, A., *ante*, at page 9.

Finally, plaintiff's section 1988 claim fails because it is dependent upon the success of her section 1981 and 1983 claims.  (42 U.S.C.S. § 1988.)

Accordingly, summary judgment was properly entered as to plaintiff's fourth cause of action.

16

## V

**Summary Judgment Was Properly Entered as to Plaintiff's Fifth and Sixth Causes of Action for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Because Plaintiff Has Failed to Produce Any Admissible Evidence That Would Support a Finding She Was Terminated for a Discriminatory Purpose**

Plaintiff's fifth cause of action for breach of contract is predicated on County's alleged breach of the memorandum of understanding (MOU) between the Service Employees International Union (SEIU) labor organization, of which plaintiff was a member, and County. Plaintiff's sixth cause of action for breach of the implied covenant of good faith and fair dealing alleges "County breached the covenant of good faith and fair dealing by retaliating against plaintiff for objecting to the discrimination, harassment and differential treatment to which she was subjected, by terminating plaintiff."

Defendants contend these causes of action fail as a matter of law because plaintiff's employment is held by statute, not contract. As we shall explain, even assuming plaintiff has an enforceable right under the MOU, plaintiff cannot prevail on her fifth and sixth causes of action.

"[I]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law." (*Miller v. State of California* (1977) 18 Cal.3d 808, 813 (*Miller*).) The terms and conditions of public employment are determined by law; the controlling statutory provisions may not be circumvented by purported contracts in conflict with them. (*Id.* at p. 814; *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1690.)

More recently, however, the California Supreme Court has "caution[ed] that our 'often quoted language that public employment is not held by contract' has limited force where, as here, the parties are legally authorized to enter (and have in fact entered) into bilateral contracts to govern the employment relationship." (*Retired Employees Assn. of*

*Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1182.)  There, the county had negotiated and approved MOU's with its employee bargaining units.  (*Ibid.*)  The court observed: " 'When agreements of employment between the state and public employees have been adopted by governing bodies, such agreements are binding and constitutionally protected.' " (*Ibid*.)  Further, " 'all modern California decisions treat labor-management agreements whether in public employment or private as enforceable contracts [citation] which should be interpreted to execute the mutual intent and purpose of the parties.' " (*Id.* at p. 1183.)

Here, plaintiff asserts she has actionable contract rights as a third party beneficiary of the MOU between the SEIU labor organization and County.  The fourth cause of action quotes the relevant provision of the MOU:

"1.3    Employees' Rights-Employer-Employee Relations

"SEIU and the County of San Joaquin recognize that **each employee** shall have the following rights which he/she may exercise in accordance with this Memorandum, Employer-Employee Relations Policy, applicable law, ordinances and rules and regulations:

". . .

"(d)    The right to represent himself/herself individually in his/her employee relations with the County . . .

"1.4    Discrimination in Employment Prohibited

"No employee, or applicant for employment, shall be discriminated against in any aspect of employment because of age, ancestry, color, creed, marital status, medical condition (cancer or genetic characteristics), national origin, physical or mental disability, political affiliation or belief, pregnancy, race, religion, sex, or sexual orientation as outlined in Civil Service Rule 20 . . . ."

Assuming without deciding that plaintiff has enforceable rights under the MOU as a third party beneficiary, she has failed to produce any admissible evidence to support a

finding she was discriminated against in her employment based on her "age, ancestry, color, creed, marital status, medical condition (cancer or genetic characteristics), national origin, physical or mental disability, political affiliation or belief, pregnancy, race, religion, sex, or sexual orientation." Accordingly, she cannot prevail on her fifth cause of action for breach of contract.

Plaintiff claims County breached the covenant of good faith and fair dealing by failing "to take any action to eliminate the hostile work environment to which plaintiff was subjected" and "retaliating against plaintiff for objecting to the discrimination, harassment and differential treatment to which she was subjected, by terminating plaintiff." Once again, plaintiff has failed to present any admissible evidence to support a finding she was terminated for a discriminatory purpose or was otherwise discriminated against, retaliated against, or subjected to a hostile work environment. Accordingly, summary judgment was properly entered as to plaintiff's sixth cause of action for breach of the implied covenant of good faith and fair dealing.

VI

Summary Judgment Was Properly Entered as to Plaintiff's Seventh Cause of Action for Intentional Infliction of Emotional Distress Because Plaintiff Has Failed to Produce Any Admissible Evidence Showing Any "Extreme And Outrageous" Conduct by County

Finally, summary judgment was properly entered as to plaintiff's seventh cause of action for intentional infliction of emotional distress because plaintiff failed to introduce any evidence showing " ' " ' "extreme and outrageous" ' " ' " conduct by defendants. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.) As with her preceding causes of action, plaintiff's seventh cause of action is premised on County's alleged discriminatory and retaliatory conduct. As with the preceding causes of action, plaintiff's seventh cause of action fails because plaintiff has not introduced any admissible evidence showing she was discriminated or retaliated against. Discipline and criticism that are part of the normal employment relationship do not constitute "outrageous" conduct, even if they are

19

intentional.  (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 25.)  Accordingly, summary judgment was properly entered as to plaintiff's seventh cause of action.

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1),(2).)


                                                  BLEASE               , Acting P. J.


We concur:


    MURRAY            , J.


    DUARTE           , J.